**FRANKFORD HOSPITAL**

v.

**BLUE CROSS OF GREATER PHILADELPHIA.**

**Civ. A. No. 74–2281.**

United States District Court, E. D. Pennsylvania.

June 9, 1975.

644

Steinberg, Greenstein Richman & Price, Philadelphia, Pa., for plaintiff.

Miles W. Kirkpatrick, Stephen W. Armstrong, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff, a non-profit hospital located in Philadelphia, has brought suit against Blue Cross of Greater Philadelphia (hereinafter "Blue Cross"), alleging that Blue Cross has monopolized the health insurance industry in the greater Philadelphia area in violation of Section 2 of the Sherman Act[1] and that it has organized group boycotts against hospitals that refuse to accede to certain of its contract terms, in violation of Section 1 of the Sherman Act[2]. Plaintiff has also alleged that these contract terms constitute unreasonable restraints of trade, in violation of Section 1 of the Sherman Act. Plaintiff has moved for certification under Federal Rule 23(a) and 23(b)(3) as class representative of a class of all non-profit hospitals, clinics, or medical centers that have had a hospital contract with defendant in force at any time during the period September 4th, 1970 to September 4th, 1974. For the reasons discussed below, we decline to certify plaintiff as representative of this or any other class under Rule 23(b)(3), and will therefore deny plaintiff's motion for class certification.

## DISCUSSION

Some of the details of Blue Cross' contractual relations with its member hospitals are necessary for an understanding of the issues presented in this case. The defendant, Blue Cross of Greater Philadelphia, is not an insurance company in the classic sense. Blue Cross does not agree to repay its subscribers' health care bills. Instead, it agrees that its subscribers may be treated at a Blue Cross "member hospital" without cost of the subscriber. Blue Cross then enters into separate contracts with hospitals under which the hospitals agree to provide services to the subscribers and look to Blue Cross for payment. Blue Cross agrees to pay a sum to the hospital based upon the hospital's costs and the portion of those costs attributable to Blue Cross subscribers.

The subject matter of this suit is Blue Cross' refusal to reimburse its member hospitals for certain costs. The most notable of these excluded costs are "free care" and "bad debt". These are costs ordinarily incurred in treating charity patients or other persons who are unable to pay. Plaintiff alleges that Blue Cross has a monopoly of health and hospital insurance in the greater Philadelphia area and has used this monopoly power to force hospitals to enter into contracts which prohibit the recovery of these costs. Plaintiff also alleges that Blue Cross has achieved, and continues to maintain, its monopoly position by shifting the burden of paying these costs to competing health insurance carriers.[3]

Plaintiff claims that by refusing to reimburse its subscribers for treatment

---

1. 15 U.S.C. § 2 (1898).

2. 15 U.S.C. § 1 (1898).

3. According to plaintiff neither Medicare or Medicade reimburse for bad debt or free care costs. Thus the hospitals must pass these unrecoverable costs on to their non-Blue Cross subscribing patients, whose bills are paid for by the health insurance carriers which compete with defendant.

at hospitals which are not Blue Cross member hospitals, defendant has engaged in a group boycott against hospitals that refuse to agree to the complained of contract terms. Plaintiff also alleges that these contract terms constitute an unreasonable restraint of trade.

Plaintiff seeks to represent a class consisting of all non-profit hospitals, clinics, or medical centers that have had a hospital contract with defendant in force at any time during the period September 4th, 1970 to September 4th, 1974, a period corresponding to that for which the statute of limitations [4] in the antitrust laws limits recovery of treble damages. This period covers two contracts entered into between the area hospitals and Blue Cross, the first in 1967 and a second in 1971. Both of these contracts include the exclusion of certain costs as recoverable costs, which is the nub of plaintiff's complaint.

■■■ We are persuaded that plaintiff has met Rule 23(a)'s numerosity, common question, and adequate representation prerequisites. Even when the member hospitals that are located in New Jersey are excluded from the potential class [5], the number of hospitals which contracted with defendant during the period in question approximates 100, which is sufficient to make the class so numerous that joinder of all members is impracticable. 23(a)(1). Whether the defendant possesses monopoly power in a relevant market, whether it uses its monopoly power to coerce the member hospitals into accepting unfavorable contract terms, and whether these terms unreasonably restrain trade, all constitute questions of law and fact common to the class. 23(a)(2). Likewise, there is no question that the plaintiff is sufficiently motivated and its counsel sufficiently competent to fairly and adequately protect the interests of the class. 23(a)(4).

■■ However, whether the claims (or defenses) of the plaintiff are typical of those of the class is more problematic. Defendant argues that plaintiff's claims are not typical of those of the member hospitals located in New Jersey, since those hospitals are incorporated and operate under New Jersey law and their contracts with Blue Cross are governed by the provisions of the different set of statutes. Defendant also argues that plaintiff may not represent those hospitals who currently have a contract in force with defendant, and that since only plaintiff and twenty-five of the remaining hospitals do not currently have contracts, the class in this case numbers no more than twenty-six and joinder of such a number is practicable. While we accept defendant's contention that plaintiff has failed to show its claims to be typical of those of the New Jersey hospitals, we believe that no typicality problem is created by the fact that some of the hospitals currently have contracts and some do not. While such a distinction may have merit in class action litigation involving franchising, *Seligson v. Plum Tree, Inc.*, 61 F.R.D. 343 (E.D.Pa. 1973), we are not persuaded that it should bar a plaintiff who sues concerning contract terms which all the putative class members have at one time or another agreed to.

■ A more serious typicality problem is posed by plaintiff's use of an accounting and cost reporting method different from the method used by nearly every other member hospital. Discovery in this case shows that while almost all of the putative class members use the "step-down" method of accounting and report their costs to Blue Cross for reimbursement on standard Medicare forms, Frankford employs the "double apportionment" method of accounting and reports its costs on its own forms. In addition, while the vast majority of potential class members apportion costs

---

4. 15 U.S.C. § 15b.

5. See discussion, p. 4, *infra*.

between in-patients and out-patients on a "charge data" basis, Frankford apportions these costs on a "statistical data" basis. Plaintiff's accountant testified at a hearing upon this matter that both the double apportionment and the step-down accounting methods were approved by the Social Security Administration (Medicare), that both were acceptable to Blue Cross as means of cost reporting, and that the methods did not vary in their ultimate results. Furthermore, plaintiff's accountant testified that apportioning in-and out-patient costs on a statistical data rather than a charge data basis did not vary the results to a significant degree. By computing Frankford's costs on the forms used by the other hospitals, plaintiff's accountant showed that both the ultimate and the ingredient cost figures did not very more than a slight percentage. We are convinced from this evidence that plaintiff's use of a nearly unique accounting and reporting method does not make its claims or defenses atypical of those of the class it seeks to represent.

## PREDOMINANCE OF COMMON QUESTIONS

Since plaintiff seeks to represent a class under Rule 23(b)(3), it must meet that section's predominance and superiority requirements as well as the preliminary requirements of 23(a)(1–4). Section 23(b)(3) states that an action may be prosecuted as a class action only if

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular form; (D) the difficulties likely to be encountered in the management of a class action.

Frankford's unique system of cost reporting, which raised problems in connection with the typicality of plaintiff's claims, raises similar problems in connection with the predominance of common questions. Undeniably, the necessity of comparing the cost reporting method used by the majority of hospitals and the one used by Frankford, even to show that they are substantially similar, will complicate the trial of this case. The complex and technical nature of the evidence needed to make this comparison may absorb and exhaust the jury's attention even though in quantity it may be less than that needed to substantiate plaintiff's antitrust claim. On the other hand, the difference in cost reporting methods may be a minor obstacle since neither form provides for bad debt or charity costs, the principal subjects of this law suit.

If the differences in cost reporting methods were the only obstacle to finding a class action to be proper in this case, we would not hestitate to certify plaintiff as a class representative, but when this problem is added to the apparent interest of other class members in individually controlling the prosecution of separate actions, we must conclude that this case is not a proper class action.

## SUPERIORITY OF CLASS ACTION

■ Both shortly before and after the filing of the present suit, a large number of the putative class members joined in suing Blue Cross for alleged violation of its contract with them. The first of these suits, *Crozer-Chester Medical Center v. Blue Cross of Greater Philadelphia,* 74–9799 (C.C.P.Del.Co.), was brought by 19 member hospitals

**648**

against the defendant. These hospitals alleged that the defendant failed to reimburse them for costs even though the hospitals were entitled to reimbursement under the "run-out" clause of their contract. Plaintiff Frankford Hospital, as well as 10 other members hospitals, intervened as plaintiffs in this action, which ended in a settlement agreement dated September 26, 1974. The second law suit involving putative class members was *Riddle Memorial Hospital v. Blue Cross of Greater Philadelphia*, 75–1667 (C.C.P.Del.Co.), in which 22 hospitals, including plaintiff, were either original or intervening plaintiffs against the defendant herein. These hospitals claimed that defendant refused to honor assignments of claims by Blue Cross subscribers to the member hospitals, and that this refusal was in violation of both the subscribers' and the hospitals' contract with Blue Cross. This litigation is still pending. In neither of these suits were the plaintiff hospitals represented by present counsel.

While these cases do not involve every one of the putative class members, and while they are not based upon the antitrust laws, they are concrete evidence of the willingness of a large segment of the putative class to litigate with Blue Cross over the contracts which are the subject of the present suit. These suits show an interest on the part of a large number of the members of the putative class in individually controlling the prosecution of separate actions, and persuade us that a class action is not superior to other available methods for the fair and efficient adjudication of this controversy, including the prosecution of this action as a separate action with the opportunity for other hospitals to intervene. Joinder would give the other hospitals a chance to consult with and be represented by counsel of their own choosing, and thus would give them greater control over the prosecution of the lawsuit.

In declining to certify plaintiff as class representative under 23(b)(3), we make no finding as to the propriety of its representing a 23(b)(2) class for injunctive relief. Certification under 23(b)(2) does not raise the question of superiority which the court must address in determining the propriety of a (b)(3) class. However, plaintiff has not moved for certification under (b)(2) and the issue is thus not before us.