Dale OSBORN, individually and on behalf of all others similarly situated in the County of New Castle, State of Delaware, Plaintiff,

v.

The PENNSYLVANIA–DELAWARE SERVICE STATION DEALERS ASSOCIATION, a corporation, and each of their respective members, the name of which are presently unknown, located within the geographical area of New Castle County of the State of Delaware, Defendants.

Civ. A. No. 79–355.

United States District Court,
D. Delaware.

Nov. 12, 1981.

William J. Wier, Jr., Terry Curtis Seningen of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Steven D. Goldberg of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., Robert P. Weiner of Zarwin, Baum, Arangio & Ross, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

STAPLETON, District Judge:

In July 1979, defendant Pennsylvania-Delaware Service Stations Dealers Association ("Association"), allegedly planned and executed a group boycott of gasoline sales to the public. The alleged aim of the boycott was to force the United States Department of Energy ("DOE") to raise the maximum retail price of gasoline; the boycott ended shortly after it began on July 13, when DOE increased the price. On July 20, plaintiff Osborn filed this class action challenging the boycott as illegal under the antitrust laws. The Association, alleging that the boycott was protected First Amendment activity, filed a motion to dismiss which this Court denied in an earlier Opinion. *Osborn v. Pennsylvania-Delaware Service Stations*, 499 F.Supp. 553 (D.Del. 1980).

The Court postponed addressing the class certification issue until the Third Circuit's denial of defendant's appeal on the First Amendment issue. On June 4, 1981, the Court issued a second opinion tentatively approving the plaintiff class for certification under Federal Rule of Civil Procedure

23(b)(3) with a bifurcated trial of the issue of antitrust violation and the issue of damages. I postponed final certification of the class, however, because the plaintiff failed to allege that he had standing or that he was a proper class representative under Federal Rule of Civil Procedure 23(a)(3).

In response to that Opinion, plaintiff filed an amended complaint. Defendant Dealers then filed a Motion to Dismiss the Amended Complaint asserting that plaintiff had failed to cure the standing and class representative defects noted by the Court; in addition, the Association's motion presented other, new grounds for dismissal. It is this motion that I currently address.

## I.

■ The original complaint failed to allege facts permitting the Court to find that plaintiff Osborn was a member of the class of persons he sought to represent, i.e., that he had attempted to purchase gasoline from one of the defendant dealers during the boycott. The Amended Complaint and attached affidavit allege that Osborn unsuccessfully attempted to purchase gasoline on July 13, 1979 from, among others, Tanglewood Arco in New Castle, Delaware. This Tanglewood Arco was then a member of the Association; thus, the Amended Complaint cures the defect of the original complaint with respect to Osborn's membership in the class.

■ Since this is an action under Section 4 of the Clayton Act, a plaintiff must also allege some injury resulting from the antitrust violation in order to proceed. See Link v. Mercedes Benz, 550 F.2d 860, 871 (3d Cir. 1977) (Gibbons, J. dissenting). Plaintiff's original complaint also lacked an allegation that he had suffered economic injury as a result of the illegal boycott by defendants. Fairly read, the Amended Complaint and supporting affidavit allege that because of the boycott, plaintiff Osborn was compelled to drive a total of 43 miles on July 13 and 14 in order to obtain gasoline from an alternate source in New Jersey and that this additional transportation expense increased his cost of gasoline above the level that would otherwise have been incurred. I find that this alleged injury appears sufficiently typical to establish plaintiff under Rule 23(a) as a representative party of the class of persons injured by the absence of free competition in the sale of gasoline during the boycott.

■ The plaintiff class represented by Osborn will consist of all persons residing in Delaware and Pennsylvania who attempted unsuccessfully to purchase gasoline from a member of the defendant class during the boycott.

## II.

■ Defendant Association also now raises an objection to certification of a *defendant* class consisting of all service station members of the Association. There are 3,700 members of the Association. The Association's objection is based on an alleged failure to meet the Federal Rule of Civil Procedure 23(b)(3) requirement that "questions of law or fact common to the members of the [defendant] class predominate over any questions affecting only individual members." Specifically, the Association asserts individual issues of fact as to the reasons of individual dealers for closing during the boycott predominate over any common questions of law or fact.

Upon analysis, I think it clear that the questions of law and fact common to the members of the defendant class predominate over the questions affecting individual members. There are two issues which can be expected to consume the vast majority of trial time on the question of liability: Did a conspiracy of the kind alleged exist and, if so, was that conspiracy an unreasonable restraint of trade under the antitrust laws. These are, of course, issues common to all class members. To be sure there may be individual issues relating to the membership of any conspiracy that is proven, but from a pragmatic point of view, these should be a relatively minor significance. It can be expected that plaintiffs will introduce evidence of action taken by the Association calling for a boycott and of the identi-

ty of Association members who in fact closed. Assuming that a conspiracy to boycott is established, this evidence will constitute *prima facie* evidence of the membership of the conspiracy. While any such dealer may thereafter come forward with evidence of another explanation for his or her closing, defendants do not deny that a massive boycott in fact occurred, and the evidence regarding these individual issues should not be substantial in volume.

Furthermore, I find that the circumstances of this case meet the second criterion of 23(b)(3) in that a class action appears superior to other methods of adjudication. Since this action seeks broad injunctive relief as well as damages, it would be inefficient for a plaintiff to proceed individually against each dealer that participated in the boycott. Moreover, because individual damages with respect to any plaintiff are likely to be small, without a class action the individual members might not have their day in court.[1] *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266, 92 S.Ct. 885, 893, 31 L.Ed.2d 184 (1972).

The purported defendant class will be certified under Rule 23(b)(3).[2]

### III.

The Association also argues that this action should be dismissed for failure to state a claim. I find no merit in any of the grounds asserted.

■ The Association argues that the Amended Complaint does not contain sufficient allegations to infer a restraint of trade. This argument seems to be premised on the absence of any allegation that competitors of the dealers have been restrained by the boycott. An illegal boycott under the Sherman Act, however, is not limited to boycotts against competitors of members of the boycotting group. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 542–43,

98 S.Ct. 2923, 2930–31, 57 L.Ed.2d 932 (1978). And plaintiff's amended complaint does allege a restraint of trade in that consumers were deprived of a competitive market in gasoline purchases by a concerted agreement to restrict supply. In *Crown v. Waldman*, 486 F.Supp. 759 (M.D.Pa.1980) the Court, on facts very similar to the instant case, observed "trade was restrained because consumers had a major source of their supply eliminated (albeit temporarily)." In addition, the Amended Complaint alleges an anticompetitive purpose for the action, i.e., to raise and fix prices. Of course, this is not to say that the effects or purpose of the restraint of trade alleged here, if proven, will not survive Rule of Reason analysis.

The Association also contends that the Amended Complaint must be dismissed because it fails to allege the necessary antitrust injury. I have already rejected this argument in Part I of this Opinion addressing the appropriateness of plaintiff Osborn as a class representative.

■ Finally, the defendant claims that the action should be dismissed because rendered moot by the deregulation of the petroleum industry. This argument must be rejected. While this development will undoubtedly make it more difficult for plaintiff to prove the kind of continuing threat which is a predicate to injunctive relief, this fact does not warrant a pretrial dismissal of this case. Moreover, to the extent that individual plaintiffs seek damages for the events of July 1979, their rights to recover have not been mooted by subsequent developments.

For the foregoing reasons, the Association's motion to dismiss the Amended Complaint is denied and plaintiff's request for bilateral class certification is granted.

---

1. My earlier Opinion preliminarily granted certification to the *plaintiff* class, and I do not understand defendant to now challenge that determination on grounds other than those already addressed.

2. I conclude that Rule 23(b)(2) is inappropriate because of the existence of the damage claim against the defendant class. *See Ungar v. Dunkin Donuts*, 68 FRD 65, 135 (E.D.Pa.1975); *Barnett v. Outboard Marine*, 64 FRD 43, 53 (D.Del.1974).