**THILLENS, INC., Plaintiff,**

v.

**The COMMUNITY CURRENCY EXCHANGE ASSOCIATION OF ILLINOIS, INC., et al., Defendants.**

**No. 81 C 3323.**

United States District Court, N.D. Illinois, E.D.

April 14, 1983.

---

Edward T. Joyce, James E. Dahl, Peter Ordower, Michael H. Moirano, Joyce & Kubasiak, Chicago, Ill., for plaintiff.

William J. Martin, Frank Stachyra, William J. Martin, Ltd., Chicago, Ill., for Individual currency exchange owners and entities.

James Coghlan, Mairen C. Kelly, Cohglan, Joyce, Nellis & Kelly, Chicago, Ill., for Community Currency Exchange Ass'n.

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for defendants Wall and Mc-Avoy.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff Thillens, Inc. ("Thillens") filed this action in 1981 against the Community Currency Exchange Association of Illinois

("Association"), former and current members of the Association ("individual defendants") and the community currency exchanges owned by those members ("exchange defendants"). Also named are three former Illinois officials ("public defendants"). Thillens alleges that over the past twenty-three years the Association and the individual defendants conspired with the public defendants to restrain Thillens' trade as an ambulatory currency exchange, in violation of federal and state antitrust laws, 42 U.S.C. § 1983, and 18 U.S.C. § 1961 ("RICO"). Also included are various pendent claims. Thillens seeks compensatory and punitive damages, injunctive relief and attorneys' fees.

Thillens is an Illinois corporation, licensed as an "ambulatory currency exchange" [1] providing "mobile check cashing services" [2] within the greater Chicago metropolitan area. Thillens claims to be the only ambulatory currency exchange operating in the Chicago area and perhaps in all of Illinois. Thillens has never belonged to the Association. The Association is an Illinois not-for-profit corporation serving as the trade association for approximately 300 persons who own or control at least 500 "community currency exchanges" [3] in Illinois. Most Chicago area community currency exchanges allegedly belong to the Association. All currency exchanges are required to be licensed by the Illinois Department of Finan-

cial Institutions ("DFI"). Ill.Rev.Stat. ch. 16½ ¶ 32.

The gist of Thillens' complaint is that the alleged conspiracy caused the DFI since 1958 to (1) deny Thillens 400 license applications to operate ambulatory currency exchanges in the relevant markets; (2) deprive Thillens of fair hearings to protest the denial of the licenses sought by Thillens; and (3) promulgate unreasonable rules and regulations substantially to Thillens' detriment.

Several motions are before the Court. [4] This Opinion and Order considers only Thillens' motion for certification of a defendant class. The proposed class includes 17 named individual defendants, approximately 350 unnamed individual past and current members of the Association and the more than 500 community currency exchanges owned by those members and represented by the Association. Neither the Association nor the public defendants is named as a class member. Thillens, however, nominates the Association as class representative.

Thillens argues that the class proposed is highly cohesive. In its view, the Association is the logical choice for class representative, precisely because it is the self-selected industry representative of the individual and exchange defendants. Thillens also claims that the Association is financially able to perform representational duties.

1. A "currency exchange" is any person, firm, association, partnership or corporation engaged in the business of cashing checks, drafts, money orders, or any other evidence of money for a fee or service charge or other consideration. Most currency exchanges also provide facilities where individuals can pay utility bills, purchase automobile license plates and city vehicle registration stickers and other miscellaneous services.

An "ambulatory currency exchange" is a currency exchange which is not operated from a single, fixed location, such as a building, but is operated from a mobile unit which is capable of operating at a number of different locations over time. Common sites for operation of an ambulatory currency exchange are factory gates on paydays. An ambulatory currency exchange similarly is engaged in the business of cashing checks for a fee.

2. A "mobile check cashing service" is an ambulatory currency exchange engaged exclusively in the business of cashing checks for a fee.

3. A "community currency exchange" is a currency exchange which operates from a single fixed location such as a building. Community currency exchanges are engaged, *inter alia*, in the range of activities described in footnote 1, and especially in the business of cashing checks for a fee.

4. Also pending are: Association, individual and exchange defendants' motion to dismiss or strike various counts for lack of subject matter jurisdiction based on the *Noerr-Pennington* Doctrine, failure to state a claim under RICO, federal abstention doctrine, failure to exhaust administrative remedies, *res judicata,* failure to state pendent claims and untimeliness.

Finally, Thillens notes that at least 95 individual defendants are represented by the law firm which represents the Association and 16 named defendants.

Thillens also supports its motion for certification of a defendant class by arguing that no unfairness would result: Supposedly each proposed defendant member paid dues to the Association during the relevant period. All of the defendants in the proposed class are alleged to have knowingly participated or acquiesced in the conspiracy and political bribery fund.[5] In light of what Thillens characterizes as virtually identical behaviors, giving rise to identical defenses, Thillens claims that certification will result in substantial savings of judicial and personal resources, without significant sacrifice by class members.

The Association and various individual defendants oppose the motion for certification of a defendant class. They argue that defendant classes are uncommon, especially in antitrust actions. Their primary objection is that certification would be inconsistent with each defendant's due process rights. The defendants also claim that the Association would be an inadequate representative of the class' interests because it formerly pled guilty to mail fraud and acknowledged the existence of a political bribery fund, acts which Thillens seeks to prove in this action. According to the Association, it would be collaterally estopped from denying those acts, to the detriment of the class members.

■ For the reasons stated below, Thillens' motion for certification of a defendant class is granted. The class is certified under Fed.R.Civ.P. 23(b)(3). Each member of the class must be notified personally of its status as a class member consistent with the requirements of Fed.R.Civ.P. 23(c)(2). In the event that liability is determined in

Thillens' favor, each member of the class who has not opted out may attempt to prove its nonparticipation in any conspiracy or nonperformance of any unlawful act. Furthermore, each member of the class may be represented by the counsel of its choice.

## DISCUSSION

### A. A Defendant Class May Be Certified If Due Process is Satisfied

■ As a preliminary matter, the Court considers whether and under what conditions a defendant class may be certified. Rule 23 of the Federal Rules of Civil Procedure clearly contemplates both plaintiff *and* defendant class actions. For example, its very first clause provides "[o]ne or more members of a class may sue *or be sued* as representative parties on behalf of all." (emphasis added). Fed.R.Civ.P. 23(a). That Rule 23 was designed to permit both plaintiff classes and defendant classes is underscored by the appearance in the Rule of phrases such as "the claims *or defenses* of the representative parties" (emphasis added), Fed.R.Civ.P. 23(a)(3), and "the prosecution of separate action by *or against* individual members of the class." (emphasis added). Fed.R.Civ.P. 23(b)(1). Unquestionably, a defendant class *may* be certified.

The analysis of *when* a defendant class will be certified is more complicated than the consideration of *if* such certification is ever possible. Regardless of whether a plaintiff or defendant class is certified, the class action device yields substantial economic and practical savings. Many parties may be brought before the court in a single suit. Each class member will be bound by the ultimate decision. *See generally,* H. Newburg, *Class Actions* (1975); Note "Defendant Class Actions," 11 *Harv.L.Rev.* 630 (1978). Furthermore, a class action ex-

---

**5.** The complaint was filed one year after the Association and certain individual defendants pled guilty to mail fraud and related charges after being indicted for the federal crimes of political bribery, corruption and mail fraud. Incident to the guilty pleas, the Association admitted the existence of a political bribery fund. One of the public defendants, A.T. Tsou-

mas, also was indicted for racketeering and mail fraud. That action is still pending.

One of Thillens' allegations, and its defense to the defendants' motion to dismiss for untimeliness, is that the defendants fraudulently concealed their actions such that Thillens did not have "good grounds" to sue until 1979 when the federal indictment was returned.

pands, by collateral estoppel effect, the scope of the decision by binding parties not before the court in the class action. *See, e.g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (patent once held valid, cannot later be challenged as invalid). Thus, the need to relitigate the same questions in multiple suits, at the risk of inconsistent judgments, is avoided.

Simultaneously, the binding nature of the class action poses a dilemma. Fundamental fairness to absentee members must be balanced against judicial savings. Where representative adjudication occurs pursuant to a defendant class, due process concerns not inherent in plaintiff class actions arise. *See, e.g., Marchwinski v. Oliver Tyrone Co.,* 81 F.R.D. 487 (W.D.Pa.1979). The crux of the distinction is: the unnamed plaintiff stands to gain while the unnamed defendant stands to lose.

■ It is the hallmark of our system of justice that personal rights cannot be compromised without due process. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (foreign defendant must have certain minimum contacts with forum state); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (no binding adjudication without reasonable attempts to notify defendant). If, however, a binding judgment depended on the assertion of *in personam* jurisdiction over each member of a class, the action's economies would be dissipated. The Supreme Court has resolved the apparent tension by holding that due process is satisfied and absent members of a class are bound so long as the interests of the absentees are adequately represented. *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940) (plaintiff class); *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 691, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961) (defendant class).[6]

Arguably, therefore, a finding that a defendant class is adequately represented should resolve the due process dilemma which attaches to certification of a defendant class. Nonetheless the concern lingers. Defendant classes seldom are certified. If at all, such certification most commonly occurs (1) in patent infringement cases, *see, e.g., Dale Electronics, Inc. v. R.C.L. Electronics, Inc.,* 53 F.R.D. 531 (D.N.H.1971); *Research Group v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497 (N.D.Ill.1969), *appeal dismissed sub nom. Research Corp. v. Asgrow Seed Co.,* 425 F.2d 1059 (7th Cir. 1970); *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 285 F.Supp. 714 (N.D.Ill.1968); (2) in suits against local public officials challenging the validity of state laws, *see, e.g., Tucker v. City of Montgomery Board of Commissioners,* 410 F.Supp. 494 (M.D.Ala.1976) (appellate procedures and allocation of court costs); *Hopson v. Schilling,* 418 F.Supp. 1223 (N.D.Ind. 1976) (welfare law); *Danforth v. Christian,* 351 F.Supp. 287 (W.D.Mo.1972) (state voting residency requirements); or (3) in securities litigation, *see, e.g., In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal. 1981); *In re Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Cal.1978); *Guarantee Insurance Agency v. Mid-Continental Realty Corp.,* 57 F.R.D. 555 (N.D.Ill.1972); *Benzoini v. Greve,* 54 F.R.D. 450 (S.D.N.Y. 1972). Attempts to certify defendant classes in antitrust actions generally are unsuccessful. *See, e.g., Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir.), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1974); *Coniglio v. Highwood Services, Inc.,* 60 F.R.D. 359 (W.D.N.Y. 1972); *Contract Buyers League v. F & F Investment,* 48 F.R.D. 7 (N.D.Ill.1969); *but see Osborn v. Pennsylvania-Delaware Service Stations Dealers Association,* 94 F.R.D. 23 (D.Del.1981); *Management Television System, Inc. v. National Football League,* 52 F.R.D. 162 (E.D.Pa.1971); *Research Corp. v. Pfister Associated Growers, Inc., supra; Arenson v. Chicago Mercantile Exchange,* No. 71 C 854 (N.D.Ill. Dec. 21,

---

**6.** The requirement of "adequate representation" is incorporated into Fed.R.Civ.P. 23(a)(4)

("the representative parties will fairly and adequately protect the interests of the class").

1972); (all four instances of certifications of defendant classes in antitrust actions).

The case of *In re Gap Stores Securities Litigation, supra,* illustrates a court's efforts to satisfy the due process interests of a defendant class. *In re Gap* involved 13 cases consolidated in a multidistrict securities litigation arising from alleged misrepresentations in the first public offering of common stock of the Gap Stores, Inc. Plaintiffs, a previously certified class of owners of common stock in Gap Stores, sought to certify a class of 91 defendant underwriters.

The court concluded that "[a]lthough defendant class actions seem to demand greater attention to the due process rights of absent class members, they are not otherwise greatly dissimilar from plaintiff class actions." 79 F.R.D. at 292. Building on due process protections for defendants in individual actions, the court held that due process for a defendant class first requires notice to each class member. "[N]otice to the representative cannot be deemed the functional equivalent of notice to the class because the defendant class representative's interests are not necessarily coextensive with the class." *Id.* at 291. Second, the *In re Gap* court held that it would certify a class of defendants only in circumstances fundamentally fair to absentee members, *i.e.,* where subject matter jurisdiction and venue are proper and representation is adequate.

The *In re Gap* opinion also provides a thoughtful framework for understanding why certification of defendant classes often is denied. There is great judicial reluctance to certify a defendant class *when the action is brought by a plaintiff class.* The primary concern with bilateral actions, antitrust or other types, is a fear that each plaintiff member has not been injured by each defendant member. *See, e.g., Adashunas v. Negley,* 626 F.2d 600 (7th Cir.1980) (proposed plaintiff class of all learning disabled children in Indiana improperly identified or not receiving special instruction from proposed defendant class of superintendents and school board members of each Indiana public school failing to identify or educate plaintiff class members); *In re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir.1974) (proposed plaintiff class of 40 million hotel guests alleging nationwide conspiracy among proposed defendant class of 47 hotel chains and 600 individual hotels to increase room rents through disguised telephone charges); *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973) (proposed plaintiff class of 33,000 customers of proposed defendant class of all licensed pawnbrokers in Oregon); *Kline v. Coldwell, Banker, supra,* (proposed plaintiff class of 400,000 plaintiffs who sold their realty to proposed defendant class of 2,000 real estate brokers in Los Angeles area).

Several rules, useful in unilateral as well as bilateral defendant class actions, emerge from *In re Gap* and similar cases: (1) A defendant class will not be certified unless each named plaintiff has a colorable claim against each defendant class member; (2) A defendant class will not be certified under Fed.R.Civ.P. 23(b)(3) [7] without a clear showing that common questions do *in fact* predominate over individual issues; [8] (3) The requirement that each named plaintiff

7. Fed.R.Civ.P. 23(b)(3), provides in pertinent part:

> (b) ... An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

It is most commonly used to certify defendant class actions because due process concerns are minimized by the opt-out provisions in Fed.R.Civ.P. 23(c)(2)(A). *See* discussion *infra* at pp. 682–683.

8. The *In re Gap* court also held that defendant class actions are inappropriate where the mechanism is used simply as a scheme "to transform a statutory scheme for personal accountability into ready martyrdom for the unlucky defendant [member] whose deep pocket will pay for the sins of the multitude." 79 F.R.D. at 295.

must have a claim against each defendant may be waived where the defendant members are related by a conspiracy or "juridical link."

A "juridical link" is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions. *See, e.g., In re Itel Securities Litigation*, 89 F.R.D. 104, 121 (N.D.Cal. 1981) (bilateral class action where both plaintiff and defendant classes certified); *LaMar v. H & B Novelty & Loan Co., supra*, at 470. Absent such juridical link, a defendant class fails the Article III test requiring a case or controversy to support the assertion of jurisdiction. *Id. See also Mudd v. Busse*, 68 F.R.D. 522 (N.D.Ind. 1975), *aff'd on other grounds*, 7 Cir., 582 F.2d 1283, *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979).

The *In re Gap* analysis, pertaining to the uncertifiability of bilateral class actions, and the three rules for certification of defendant class actions are significant here. Many of the cases cited by the Association to bolster its opposition to certification of a defendant class are *bilateral* class actions. In those cases, the putative defendant classes often were amorphous: each named plaintiff could not possibly have been harmed by each proposed defendant class member. *See, e.g., Adashunas v. Nelgey, supra; LaMar v. H & B, supra; Kline v. Coldwell, Banker, supra; Mudd v. Busse, supra*. In contrast, this action is not a bilateral class action. Rather, a single plaintiff, Thillens, alleges that it has been injured by each member of the proposed defendant class. Instead of being an amorphous entity, the proposed defendant class of currency exchanges and their individual owners is highly cohesive and self-organized. It is juridically linked at least by allegations that each defendant class member voluntarily joined a conspiracy to harm Thillens. Additionally, this Court has subject matter jurisdiction over the claims made.

There are no theoretical roadblocks to certification of this defendant class anti-

trust action so long as due process safeguards are imposed. However, the proposed class still must be tested by the provisions of Fed.R.Civ.P. 23(a) and (b).

**B.** *The Defendant Class Proposed Meets the Requirements of Fed.R.Civ.P. 23(a)*

The requirements for class certification are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Each requirement is met here. For purposes of determining class certification, the allegations are taken as true and the merits of the complaint are not examined. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### 1. *Numerosity*

The proposed class of defendants is so numerous that it would be impracticable to individually join its members. Fed.R. Civ.P. 23(a)(1). The class proposed consists of 17 named individual defendants, approximately 350 unnamed individual past and current members of the Association and the more than 500 community currency exchanges owned by those members and represented by the Association. Clearly, almost 900 members satisfies the numerosity requirement of Fed.R.Civ.P. 23(a)(1). As the court recently observed in *Johnson v. Brelje*, 482 F.Supp. 121, 123 (N.D.Ill.1979), *quoting Cullen v. United States*, 372 F.Supp. 441, 447 (N.D.Ill.1974), "[a]n attempt to join [hundreds of] persons in one proceeding no doubt 'would stretch the facilities and abilities of this Court beyond their elastic limit.'" *See also Research Corp. v. Pfister Associated Growers Inc., supra* (class of more than 400 too large to individually join).

■ Where the class is large, the numbers alone are dispositive of the impracticability of joinder. *Edmondson v. Simon*, 86 F.R.D. 375 (N.D.Ill.1980). In such cases, the Court need not look to factors other than size, *e.g.*, geographic dispersion of the proposed members. *Compare Garcia v. Gloor*, 618 F.2d 264 (5th Cir.), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1980) (class certified of 34 members located throughout the country) *with Winokur v. Bell Federal Savings and Loan Association*, 16 F.R.Serv.2d 65 (N.D.Ill.1972) (certification denied to class composed of 86 savings and loan institutions all located in the Chicago area).

### 2. *Commonality of Legal and Factual Questions*

■ There are both legal and factual questions common to the proposed class of defendants. Fed.R.Civ.P. 23(a)(2). It is sufficient for class certification that the common question be either of fact *or* law. Not all factual or legal questions raised in the lawsuit need be common so long as a single issue is common to all class members. *See, e.g., Edmondson v. Simon, supra; Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Nor should variance in members' positions to the common issue be dispositive of the decision to certify a class action.

Although this is a multi-claim action, Thillens' major claim alleges an antitrust conspiracy. The overriding common issue of law is to determine the existence of a conspiracy. *See, e.g., In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322 (E.D.Pa. 1976); *Chevalier v. Baird Savings Association*, 72 F.R.D. 140 (E.D.Pa.1976); *Research Corp. v. Pfister Associated Growers, Inc., supra*.

■ Thillens also raises as questions common to the antitrust claim (1) whether the Association and members of the defendant class established a secret fund in order to bribe public officials; (2) whether the Association and members conspired to restrain trade in the greater Chicago metropolitan area currency exchange market; (3) whether the Association and members monopolized the greater Chicago metropolitan area currency exchange market; (4) whether the Association and defendants conspired to fix prices in the currency exchange industry; and (5) whether the Association and defendants conspired to improperly divide the relevant geographic currency exchange market. Any one of these legal questions will satisfy the commonality requirement of Fed.R.Civ.P. 23(a)(2).[9]

■ It is irrelevant for commonality purposes that some members will be able to avoid liability by later showing that they did not take part in any conspiracy proven. In *Osborn v. Pennsylvania-Delaware Service Station Dealers Association, supra,* a defendant class of 3,700 members of a service station dealers' association was certified. The named plaintiff, representing a class of plaintiffs, alleged that a group boycott by the association, as evidenced by unnecessary service station closings, was an illegal attempt to raise the maximum price of gasoline. The fact of the boycott was admitted. The Association opposed certification, *inter alia,* on the ground that individual dealers had various, lawful reasons for closing during the boycott and presentation of those reasons precluded a finding of commonality.

■ The *Osborn* court disagreed, holding:

There are two issues which can be expected to consume the vast majority of trial time . . . Did a conspiracy . . . exist and, if so, was [it] . . . unreasonable . . . under the antitrust laws? These are, of course, issues common to all class members. To be sure there may be individual issues relating to the membership of any conspiracy that is proven, but . . . these should be of relatively minor significance. It can be expected that plaintiffs will introduce evidence of action taken by the

---

9. Thillens also raises as common several factual issues: all the defendant class members have joined the Association and all members pay dues to it.

Association calling for a boycott and of the identity of Association members who in fact closed. Assuming that a conspiracy to boycott is established, this evidence will constitute prima facie evidence of the membership of the conspiracy.

Similarly, the members of the defendant class proposed by Thillens will be presumed to have joined the antitrust conspiracy if such conspiracy is proven. *See, e.g., Weit v. Continental Illinois National Bank & Trust Co.,* 467 F.Supp. 197 (N.D.Ill.1978), *cert. denied,* 454 U.S. 810, 102 S.Ct. 86, 70 L.Ed.2d 80 (1981) (circumstantial evidence can be used, if logical and reasonable, from which to infer joint, consensual conduct); *Phelps Dodge Refining Corp. v. FTC,* 139 F.2d 393 (2d Cir.1943) (mere membership in an association is insufficient to create liability in the members for the acts of the association but a member who knows of his association's wrongs or should have known, becomes a principal by ratification unless he disassociates himself from the association). *See also Expert Electric, Inc. v. Levine,* 399 F.Supp. 893, 897–98 (S.D.N.Y.1975), *aff'd* 2 Cir., 554 F.2d 1227, *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (adopting ratification principle of *Phelps Dodge*). *But see Kline v. Coldwell, Banker, supra* (rejecting concept of membership ratification for purpose of finding group liability).

### 3. *Typicality of Defenses*

■ Class certification requires that the defenses of the class representative be typical of the defenses of the class members. Fed.R.Civ.P. 23(a)(3). Typicality does not require that the defenses be identical or perfectly coextensive; substantial similarity is sufficient. *See, e.g., Frankford Hospital v. Blue Cross of Greater Philadelphia,* 67 F.R.D. 643 (E.D.Pa.1975); *Life of the Land v. Land Use Commission,* 623 P.2d 431 (Haw.1981).

Professor Moore restates the question posed by Rule 23(a)(3) as "What is the individual claim of the class representative?" 3 B Moore's Federal Practice ¶ 23.06 at 23–191–192 (2d ed. Supp.1980–81). In his view, typicality takes the "commonality"

element from 23(a)(2) and the "nature of the representative claim defense" from 23(a)(4) and requires that the representative claim element be typical of the commonality element. *Id.* Thus, Professor Moore characterizes the main purpose of 23(a)(3) as neither schizophrenic nor redundant, but as a cumulative effort to satisfy the court's general obligation to fully protect absentee members. *See also Stewart v. Winter,* 87 F.R.D. 760 (N.D.Miss.1980), *aff'd* 669 F.2d 328 (5th Cir.1982); *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685 (E.D.Pa.1977).

Applying Moore's formulation, the paramount representative defense of the Association likely will be to deny the existence of a conspiracy to injure Thillens in violation of antitrust laws. Furthermore, if any joint activity is shown, the Association also will be expected to argue that such activity was not illegal. The nature of these defenses not only is typical but identical to the common defenses of the class members—the nonexistence of the conspiracy and the lawfulness of their joint behaviors.

■ Typicality, like commonality, is not sacrificed because individual members will oppose liability by denying participation in any illegal conspiracy or scheme. Judge Robson rejected a similar argument in *Research Corporation v. Pfister Associated Growers, Inc., supra,* at 502:

> The defenses to the charge of conspiracy are also typical of the defenses of the class. Although there is the individual issue of participation in the conspiracy, it is clearly alleged that the representative defendants and most of the other potential class members have been engaged in some activity in opposition to this patent. As such, all proper class members will be expected to defend on the ground that whatever joint activity took place was not illegal. Rule 23(a)(3).

It is only where a unique defense will consume the merits of the case, that a court should refuse to certify a class due to atypicality. *Koos v. First National Bank,* 496 F.2d 1162 (7th Cir.1974); *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495 (7th Cir.1972);

*Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339 (N.D.Ill.1978). No unique or atypical defenses are suggested here. Fed.R.Civ.P. 23(a)(3) is satisfied.

#### 4. *The Association is an Adequate Representative*

 Because of the serious due process problems which attend the certification of a defendant class, the 23(a)(4) mandate for an adequate representative must be strictly observed. The test of adequacy of representation proposed by Fed.R.Civ.P. 23(a)(4) is two-pronged: (1) the representative must be able to conduct the litigation and (2) the representative's interests must not be antagonistic to those of the class members. *See, e.g., Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir. 1977). Although the representative need not be a member of the class, *see, e.g., Truckee-Carson Irrigation District,* 71 F.R.D. 10 (D.Nev.1975), there is the further requirement that the class representative must have injured the plaintiff in the same way as other defendants have injured him. *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 505 (9th Cir.1980), *relying on Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975).

The Association allegedly has injured Thillens in precisely the same way as did every individual defendant, exchange defendant and public defendant. All defendants allegedly conspired to ruin Thillens' ambulatory currency exchange business, maintained a secret bribery fund for that purpose and engaged in antitrust and common law violations to Thillens' detriment.

 Nonetheless, the Association is an unwilling class representative. That fact alone should not deter a court from naming it as representative, however. In *In re Gap,* the court observed that "[i]ronically the best defendant class representative may well be the one who most vigorously and persuasively opposes certification since he is the one most likely to guarantee an adversary presentation of the issues." 79 F.R.D. at 290. If the sheer volume of the briefs which have been filed by the Association (and Thillens) in this case are any indication, adversary presentation of all issues by the Association is guaranteed.

 The real concern with a reluctant representative should be for his ability to carry the expense and other practical burdens of a class defense. *See, e.g., Mudd v. Busse, supra,* at 529. In *Mudd,* the court refused to certify a defendant class of judicial officers in Indiana who allegedly would not release pretrial detainees for failure to make bail. The representative proposed was Judge Busse. The court found that the cost of discovery would be impossible for Judge Busse to bear in so complex a class action.

Here, no serious suggestion can be raised that the Association either is financially unable or without requisite skills to act as the class representative. In fact, the Association does not argue the point. Presumably, the Association is fiscally sound. It owns a bank and at least one currency exchange. No individual defendant could better afford the role of class representative. Furthermore, the Association, through its attorneys, has considerable litigation experience. It has sued to protect the rights of the Association in matters of common interest to its members. The lawyers currently representing the Association, represented the Association and certain individual defendants in the criminal action which prompted Thillens to bring this suit.

Moreover, the Association's directors coincidentally are defendant class members. They have a clear channel of communication from the defendant class to the proposed representative. No doubt the director/defendants will consult on trial strategy and concerns of class members with the Association. Furthermore, the defendant class members fund the Association and, therefore, to some extent control it.

Finally, the Association is the self-selected representative of the member defendants. Each named and unnamed class member allegedly has voluntarily joined the Association seeking to have its business interests represented by the Association. The defendant members pay dues for the very

purpose of having the Association represent their interests.

This Association, therefore, is similar to an association named as representative of a defendant class in *United States v. Truckee-Carson Irrigation District, supra.* The *Truckee-Carson* court found that the association, although not a class member, existed for the expressed purpose of representing its members and protecting or asserting their common interests. It was the perfect class representative. 71 F.R.D. at 16. Similarly, this Court concludes that the Association is an able, if not the only possible, class representative in this case. Prong one of 23(a)(4) is satisfied.

 The second prong of 23(a)(4) also is met. The Association's interests are not antagonistic to the interests of the members of the class. Certification of a class on the grounds of antagonism should be denied only if that antagonism goes to the subject matter of the litigation. *Oneida Indian Nation of Wisconsin v. State of New York,* 85 F.R.D. 701, 706 (N.D.N.Y.1980).

The main subject matter in this case is antitrust. All parties, the representative, defendant class members and public defendants are expected to try to avoid liability by disclaiming an antitrust conspiracy. Arguably, the Association will not passively raise that defense. In defending itself vigorously, the Association necessarily will raise all defenses of the class members except for individual members' claims of nonparticipation in the conspiracy. *See Rosado v. Wyman,* 322 F.Supp. 1173, 1193 (S.D.N.Y.1970), *aff'd on other grounds,* 437 F.2d 619 (2d Cir.1970), *cert. denied,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). In fact, this Association has an added incentive to vigorously defend the interests of the members. The Association's by-laws provide that it will indemnify, on request, Association members who are found liable for actions arising out of membership in the Associa-

tion. Clearly, the interests of the Association are not antagonistic to the interests of the class members.

Nonetheless, the Association raises a troublesome point in opposition to its adequacy. The Association claims that it cannot adequately represent the members of the class since it has pled guilty to several counts of mail fraud and has admitted the existence of a political bribery fund. The argument runs that defendant class members would be prejudiced because the Association will be collaterally estopped from denying those actions.[10]

 In the offensive use of collateral estoppel, a plaintiff seeks to prevent a defendant from relitigating an issue which the defendant unsuccessfully litigated in an action with another party. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In order to give collateral estoppel effect in a civil proceeding to matters decided in a criminal adjudication, the matter must have actually been decided or have been necessary to the resolution of the matter decided in the prior proceedings. *Von Lusch v. C & P Telephone Co.,* 457 F.Supp. 814 (D.Md.1978). The matter decided in the former criminal action may have resulted from a guilty plea. *Brazzell v. Adams,* 493 F.2d 489 (5th Cir.1974).

 Unlike *res judicata,* collateral estoppel does not apply to matters which *could have been* litigated. *Continental Can Co. U.S.A. v. Marshall,* 603 F.2d 590 (7th Cir.1979); *McTavish v. Spiotto,* 500 F.Supp. 703 (N.D.Ill.1980). *Cf. Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982) (*res judicata*). If there is a reasonable doubt as to what was decided in a prior judgment, that doubt should be resolved against using collateral estoppel unless the issue clearly appears on the face of the former complaint.

---

**10.** Although the Association argues that class members cannot be held liable on a ratification theory, *see* discussion *supra,* at pp. 677–678, its collateral estoppel argument is logical only if the class members can, in fact, be liable through ratification, *i.e.,* in order to bind the class members to the Association's forced admission of bribery and mail fraud, it must be that members of the Association are deemed to have at least acquiesced in those unlawful acts if they knew or should have known of them. The Association cannot have it both ways.

*Sesso v. Rapone,* 537 F.Supp. 1091 (E.D.Pa. 1982).

The Association entered a guilty plea on May 20, 1980 in which it admitted keeping and using a secret cash fund for making political contributions to Illinois public officials. The purpose of the "bribes" was to influence actions affecting the currency exchange industry and its members. The Association also pled guilty to five counts of mail fraud in furtherance of that scheme. The Court supposes, without deciding, that the Association will be collaterally estopped from denying the existence of the fund. Consistent with the guilty plea, the Association also likely would be estopped from denying use of the fund to bribe public defendants McAvoy and Wall and from denying mail fraud.

 The Association's forced admission in this action of political bribery and mail fraud, however, would not result in an automatic finding of a conspiracy in violation of the antitrust laws. Nor would such admissions necessarily indicate that Thillens was the target of the conspiracy. At a minimum, Thillens still must prove the existence of a conspiracy, its focus on Thillens and an anticompetitive effect of the conspiracy in the relevant markets. Undoubtedly the Association intends to vehemently oppose Thillens' effort to establish the antitrust claims or any of the other claims it raises in this case. Based on the history of the relationship between the parties thus far, the Court is sure that the Association's defense will be rigorous and spirited. All members of the defendant class proposed will be adequately represented by the Association regardless of any collateral estoppel effect which might be imposed to coerce admissions against the Association's interest. The due process rights of the defendant class members will not be offended by naming the Association as class representative. All the requirements of 23(a), therefore, are satisfied.

C. *The Defendant Class Proposed Meets the Requirements of Fed.R.Civ.R. 23(b)(3)*

A class action which meets the terms of 23(a) also must qualify under any *one* of the subsections of Rule 23(b). This proposed defendant class will be certified under Rule 23(b)(3). Rule 23(b)(3) provides:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the ... defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The determination required by 23(b)(3) is different than that sought under 23(a). Rule 23(a) asks whether there are common questions of law or fact, whereas 23(b)(3) expands 23(a) by requiring that the common questions must predominate. *Contract Buyers League v. F & F Investment, supra,* at 11.

Most antitrust class actions are certified under 23(b)(3). *But see Minnesota v. United States Steel Corp.,* 44 F.R.D. 559, 568 (D.Minn.1968) (plaintiff class in antitrust action certified under 23(b)(1)(A)); *Arenson v. Chicago Mercantile Exchange, supra* (defendant class in antitrust action certified under 23(b)(2)). However, the Court must not perfunctorily find predominance, for only where predominance exists will the economic utility of the class action device be realized. Advisory Committee's Note, 39 F.R.D. 69, 103 (1966). "[P]rivate damage claims by numerous individuals arising out of concerted antitrust violations [even those

alleging conspiracy] may or may not involve predominate common questions." *Id.*

As noted throughout, the primary common issue is to prove the existence of a conspiracy against Thillens in violation of antitrust laws. Clearly that issue will predominate the litigation. In fact, all the issues common to establishing antitrust violations are overriding. The only noncommon issue will be the individual members' defenses of nonparticipation. Given the complexity of the antitrust matters, the individual defenses will occupy only a minor portion of the trial time.

Rule 23(b)(3) also requires a finding that a class action is superior to other available methods of adjudication. For Thillens, a class action is superior, if not the only way, by which all its claims can be litigated. The cost of individual service and suits would be high if not prohibitive. If forced to separately litigate, Thillens likely would forego actions against numerous defendant class members.

From the defendants' perspective, the class action also is superior to other forms of dispute resolution. No individual defendant will have to carry the whole cost of this litigation. Although dues to the Association might increase as the suit progresses, any one defendant's proportionate share would be far smaller than his cost for a separate action. Individual class members would not be expected to take time from their business or personal pursuits to continuously appear at what no doubt will be a lengthy trial.

Furthermore, because their Association is the representative, class members will not relinquish total control over the management of the case. Since some class members serve as Association directors they undoubtedly will advise the Association in this matter. Presumably, even nondirector class members are in contact with the Association and can assist with and be apprised of the Association's defense through membership meetings, elections and newsletters. In the event that some members desire additional counsel, they will be permitted to seek such assistance.

Finally, this class action is especially superior from a judicial standpoint. Most of the defendant class members reside in the Cook County area and the effect of the alleged conspiracy was centered in that area. If Thillens sued all 900 or so defendants individually, most of the suits would be brought in the United States District Court for the Northern District of Illinois. An already busy docket would be further taxed. Precisely because most defendants are local, this Court does not contemplate any serious problems in the management of the action. In sum, absent voluntary agreement to arbitrate their differences or to settle, the class action is the superior method by which to adjudicate Thillens' claims.

Although this defendant class meets all the relevant requirements of 23(b)(3) and most defendant classes are certified under 23(b)(3), certification of a defendant class thereunder is questionable. *See,* H. Newburg, *Class Actions,* ch. 3 §§ 1146, 1148C. Sometimes called the "exclusionary section," Fed.R.Civ.P. 23(c)(2)(A) expressly permits any defendant in a class certified under 23(b)(3) to opt-out of the class if he does so by a specific date. Thus, the risk in certifying a defendant class under 23(b)(3) is that all or many class members will "jump ship." The risk is minimized, however, because opting-out defendants are at risk of "losing" the effect of a favorable decision in the event that this action is determined against Thillens. Opting-out defendants also may have to underwrite much of the cost of a separate litigation should Thillens decide to sue them individually. Those risks may be sufficient incentive to cause most defendants to stay in the class action.

Despite the exclusionary limitation, 23(b)(3) certification is the best way to address the serious due process concerns which pervade the prosecution of a defendant class. All class members will be given notice of Thillens' intent to include them in the class and of their right to opt-out. Each defendant who elects to remain may seek individual counsel. Any defendant class member who does not timely quit the

class cannot, therefore, argue in good faith that certification of the class was a violation of its due process rights.

Although certification preliminarily is granted to the class proposed by Thillens, the Court is concerned that there may be duplication among the almost 900 members. Some of the exchange defendants are corporations. They exist as independent entities and are properly included in the class. Other exchanges, however, are unincorporated. Of these, some may be partly owned by an individual defendant or not legally owned but controlled by him, *e.g.*, exchanges owned jointly with individual defendant's wife or owned only by his minor children. Arguably, such exchanges must be included or else their assets may be beyond the reach of a judgment in Thillens' favor. In still other cases, an unincorporated exchange may be owned exclusively by an individual defendant; it is, in effect, merely an additional asset of that defendant. Inclusion in the class of the latter category of defendant may contribute to class management problems and add nothing positive. The Court will consider at a later time whether some exchange defendants are not properly in the class.

IT IS THEREFORE ORDERED that

(1) A defendant class will be certified under Fed.R.Civ.P. 23(b)(3) to consist of: 17 named individual defendants, approximately 350 unnamed individual past and current members of the Community Currency Exchange Association of Illinois, Inc., and the more than 500 community currency exchanges owned by those members and represented by the Association.

(2) The parties are ordered to submit to the Court by May 6, 1983 sample notice forms pursuant to Rule 23(c)(2), by which named and unnamed class members will be advised of this action, of the binding nature of any judgment, that they can opt-out by a specified date and that they may retain individual counsel.

(3) The parties are to address by May 6, 1983 whether any of the currency exchanges to be included in the class pursuant to this Order should be excused.

(4) A status hearing is set for May 20, 1983 at 9:30 a.m.