**Nancy FOLLETTE and Marie Sickler, individually and on behalf of all persons similarly situated, Plaintiffs,**

v.

**Hon. Matthew VITANZA and Hon. John T. Hillis, in their capacity as Judges of the City Court of the City of Binghamton and on behalf of all others similarly situated, John Bachochin, Jr., in his capacity as the Marshal of the City Court of the City of Binghamton, and on behalf of all others similarly situated, Thomas J. Hull and Robert B. Kaman, as partners in Kaman and Hull, Richard Gamble, and Susquehanna Anesthesia Affiliates, Defendants.**

**No. 81–CV–965.**

United States District Court, N.D. New York.

March 27, 1987.

494

Broome Legal Assistance Corp., Eleanor Polimeni, Binghamton, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen., State of New York, Albany, N.Y., Miriam B. Hutchins, Asst. Atty. Gen., Binghamton, N.Y., for defendants Vitanza, Hillis and Bachochin.

Kaman and Hull, Binghamton, N.Y., pro se.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

This suit involves a challenge to New York's wage garnishment procedures. *See* N.Y.C.P.L.R. §§ 5230, 5231, 5240 (McKinney 1978 & Supp. 1987); N.Y. Uniform City Ct. Act ("UCCA") §§ 1501, 1504, 2102 (McKinney Supp.1987).[1] Plaintiffs bring

1. The most important provisions of New York's statutory scheme regulating post-judgment income executions are found in Article 52 of the Civil Practice Law and Rules, which specifically governs the procedures to be followed in civil actions before New York's Supreme Court and is applicable to civil proceedings before other courts of the state unless a provision of the CPLR is superceded by an inconsistent provision in one of New York's many uniform lower courts acts. *See* N.Y. C.P.L.R. § 101 (McKinney 1972). One of those lower court acts, the Uniform City Court Act ("UCCA") (which is applicable to actions brought in the City Court of Binghamton, New York, and thus relevant to the present lawsuit), specifically provides that "[t]he CPLR and other provisions of law relating to practice and procedure in the supreme court, notwithstanding reference by name or classification therein to any other court, shall apply in this court as far as the same can be made applicable and are not in conflict with this act." N.Y. Uniform City Ct. Act § 2102 (McKinney Supp.1987).

The relevant sections of the CPLR governing income executions in New York are as follows:

§ 5230. Executions

(a) Form. An execution shall specify the date that the judgment was entered, the court in which it was entered, the amount of the judgment and the amount due thereon and it shall specify the names of the parties in whose favor and against whom the judgment was entered. An execution shall direct that only the property in which a named judgment debtor who is not deceased has an interest, or the debts owed to him, be levied upon or sold thereunder and shall specify the last known address of that judgment debtor. Where the judgment was entered in a court other than the supreme, county or a family court, the execution shall also specify the date on which a transcript of the judgment was filed with the clerk of the county in which the judgment was entered....

. . . . .

§ 5231. Income execution

(a) Form. An income execution shall specify, in addition to the requirements of subdivision (a) of section 5230, the name and address of the person from whom the judgment debtor is receiving or will receive money; the amount of money, the frequency of its payment and the amount of the installments to be collected therefrom; and shall contain a notice to the judgment debtor that he shall commence payment of the installments specified to the sheriff forthwith and that, upon his default, the execution will be served upon the person from whom he is receiving or will receive money.

(b) Issuance. Where a judgment debtor is receiving or will receive more than eighty-five dollars per week from any person, an income execution for installments therefrom of not more than ten percent thereof may be issued and delivered to the sheriff of the county in which the judgment debtor resides or, where the judgment debtor is a non-resident, the county in which he is employed.

(c) Service upon debtor. Within twenty days after an income execution is delivered to the sheriff, the sheriff shall serve a copy of it upon the judgment debtor, in the same manner as a summons or, in lieu thereof, by certified mail return receipt requested provided additional copies are sent by regular mail ... to the debtor ... and ... to the debtor in care of his last known employer....

(d) Levy upon default or failure to serve debtor. If a judgment debtor fails to pay installments pursuant to an income execution served upon him for a period of twenty days, or if the sheriff is unable to serve an income execution upon the judgment debtor within twenty days after the execution is delivered to the sheriff, the sheriff shall levy upon the money that the judgment debtor is receiving or will receive by serving a copy of the income execution, indorsed to indicate the extent to which paid installments have satisfied the judgment, upon the person from whom

this action under 42 U.S.C. § 1983 (1982), contending that defendants, acting under color of state law, have deprived plaintiffs of wages which are exempt from garnishment by § 303 of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1673 (1982), thereby denying them "rights, privileges, or immunities" secured by the CCPA and the due process clause of the fourteenth amendment of the United States Constitution.[2] Plaintiffs also maintain that New York's garnishment procedures offend due process by failing to adequately notify judgment debtors of the provisions through which an execution can be challenged in state court. Defendants Vitanza, Hillis and Bachochin move to dismiss the complaint under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. Plaintiffs cross move for the certification of three separate classes under Rule 23, Fed.R.Civ.P., and for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

## I. BACKGROUND

On June 15, 1981 a default judgment was taken against plaintiff Follette in the City Court of Binghamton, New York in an action to collect a debt owed defendant Susquehanna Anesthesia Affiliates ("Susquehanna"). Thereafter, defendants Kaman and Hull, Binghamton attorneys representing Susquehanna, issued an income execution and delivered it to defendant Bachochin, the Marshal for the City Court in Binghamton, who subsequently served the income execution upon Follette's employer, Federal Electronics, Inc. of Vestal, New York. The income execution was computed under § 5231(b) of New York's Civil Practice Law and Rules ("CPLR"), and ten percent of Follette's wages earned between July 17, 1981 and August 21, 1981 were garnished. A total of $84.00 was retained by Federal Electronics, Inc. and turned over to Bachochin to be delivered to Susquehanna. Meanwhile, on June 5, 1981, a default judgment was rendered against plaintiff Sickler for a debt owed defendant Richard Gamble. Kaman and Hull, on behalf of Gamble, issued an income execution upon Sickler's employer, the Ramada Inn in Binghamton. This execution was also computed under CPLR § 5231(b), and $74.57 was withheld from Sickler's wages between July 11, 1981 and August 22, 1981.

Section 303 of the Consumer Credit Protection Act provides that, subject to certain exceptions not applicable to the present case,

the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

the judgment debtor is receiving or will receive money personally within the county in the same manner as a summons or by certified mail return receipt requested....

(e) Withholding of installments. A person served with an income execution shall withhold from money then or thereafter due to the judgment debtor installments of ten percent thereof and pay them over to the sheriff. If such person shall fail to so pay the sheriff, the judgment creditor may commence a proceeding again him for accrued installments....

 • • • •

(g) Modification. At any time, the judgment creditor or the judgment debtor may move, upon such notice as the court may direct, for an order modifying an income execution.

 • • • •

(i) Accounting by sheriff. It shall be the duty of the sheriff to whom such income execution shall be delivered, from time to time and at least once every ninety days from the time a levy shall be made thereunder, to account for and pay over to the person entitled thereto all monies collected thereon, less his lawful fees and expenses for collecting the same.

 • • • • •

§ 5240. Modification or protective order; supervision of enforcement.

The court may at any time, on its own initiative·or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure....

N.Y. C.P.L.R. §§ 5230, 5231, 5240 (McKinney 1978 & Supp.1987).

**2.** Plaintiffs also allege violations of the due process clause of the New York Constitution, N.Y. Const. art. 1, § 6. Because § 1983 provides a remedy only for the deprivation of rights protected by federal constitutional or statutory law, plaintiff's state constitutional claims are not cognizable under § 1983 and are therefore summarily dismissed.

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable, whichever is less.

15 U.S.C. § 1673(a) (1982). An individual's "disposable earnings" consists of that part of his earnings "remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b). Since January 1, 1981 the minimum wage prescribed by the Fair Labor Standards Act has been $3.35 an hour. 29 U.S.C. § 206(a)(1) (1982). Thus, as a general rule the CCPA completely exempts $100.50 of net weekly income from garnishment. Further, if an individual's disposable income for a work week exceeds $100.50 but is less than $134, only the amount above $100.50 is subject to garnishment. 29 C.F.R. § 870.10(b)(2) (1986). Section 5231(b) of the CPLR, however, provides that "[w]here a judgment debtor is receiving or will receive more than eighty-five dollars per week from any person, an income execution for installments therefrom of not more than ten percent thereof may be issued...." N.Y.C.P.L.R. § 5231(b) (McKinney 1978 & Supp.1987). This subsection has not been adjusted by the New York legislature since 1970, and now clearly violates the limitations on gar-

nishment imposed by federal law when applied to certain low-income judgment debtors.[3] In the present case, plaintiff Follette had $84.00 in wages withheld pursuant to the income execution calculated under CPLR § 5231(b) despite the fact that 15 U.S.C. § 1673(a) only authorized the retention of $19.99. Similarly, $74.57 was withheld from plaintiff Sickler's wages, even though federal law allowed only $9.88 to be withheld. Affidavit of L. David Zube, Doc. 3, ¶ 6.

On September 10, 1981 plaintiffs instituted this lawsuit.[4] In addition to Hull, Kaman, Gamble and Susquehanna, plaintiffs have named as defendants the Honorable Matthew Vitanza and the Honorable John T. Hillis, in their official capacities as Judges of the City Court of Binghamton, New York, and John Bachochin, Jr., in his official capacity as Marshal of the City Court of Binghamton. Plaintiffs seek the certification of one plaintiff class and two defendant classes, declaratory and injunctive relief on behalf of themselves and other judgment debtors subject to wage garnishment[5] under New York law, the recovery of that portion of her garnished wages exempt under 15 U.S.C. § 1673, and attorney fees under 42 U.S.C. § 1988 (1982). In essence, plaintiffs claim they were deprived of rights safeguarded by 15 U.S.C. § 1673 and the due process clause of the fourteenth amendment, giving rise to a cause of action under 42 U.S.C. § 1983. To ad-

---

3. For example, plaintiff Sickler earned $117.75 in gross wages for the weekly pay period ending July 11, 1981. If she had claimed one exemption on her W–4 tax form, her net income for the week after various withholdings mandated by state and federal law would have been $95.12, and thus would have been completely exempt from garnishment under the CCPA. Nonetheless, ten percent of Sickler's gross income, or $11.78, was garnished pursuant to CPLR § 5231(b). Affidavit of L. David Zube, Doc. 3, ¶ 6. For the week ending July 25, 1981 Sickler's gross income was $139.03. After the minimum amount of withholding tax required by law is deducted from her gross wages, Sickler's remaining disposable income would have been $110.38. Under federal law, the maximum amount that could be garnished for that week was $9.88. Despite this, a total of $13.90 was withheld pursuant to an income execution served pursuant to New York law. *Id.*

4. On September 10, 1981 the court issued a temporary restraining order enjoining the continued garnishment of plaintiffs' wages under the challenged income execution, and on September 17, 1981 a preliminary injunction was issued upon the consent of the defendants.

5. An "income execution" issued and delivered pursuant to the terms of N.Y. C.P.L.R. §§ 5230 and 5231 (McKinney 1978 & Supp.1987) is attacked in this lawsuit. Under New York law, an income execution is only one form of "garnishment"; any levy on the assets of a judgment debtor which are in the possession of a third person is a "garnishment." This would include levies under a property execution. *See* N.Y. C.P.L.R. §§ 5230, 5232–33, 5235–36 (McKinney 1978 & Supp.1987). As used in this memorandum-decision, the terms "garnishment" will refer specifically to an income execution under CPLR §§ 5230 and 5231.

dress the substantive issues raised by the parties in as orderly a manner as possible, the court will first examine the extent to which a cause of action under § 1983 can be maintained under the facts as alleged by plaintiffs.

## II. PLAINTIFFS' § 1983 CLAIMS PREDICATED UPON THE ALLEGED VIOLATION OF 15 U.S.C. § 1673

▬ Plaintiffs assert that the court has jurisdiction over their claims based on the violations of the CCPA under 28 U.S.C. § 1331 (1982) [6] since plaintiffs seek relief from these violations through the remedy provided by 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a cause of action under § 1983, plaintiffs must show that they were deprived of rights "secured by the Constitution and laws" of the United States. The Supreme Court recognized in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), that the remedy provided by § 1983 "encompasses violations of federal statutory as well as constitutional law." *Id.* at 4, 100 S.Ct. at 2504. Section 1983, however, is remedial in nature and neither creates substantive rights in and of itself nor adds anything of a substantive nature to rights created by statute. *Maher v. Gagne,* 448 U.S. 122, 129 n. 11, 100 S.Ct. 2570, 2574 n. 11, 65 L.Ed.2d 653 (1980); *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979). A party basing its § 1983 claim

on the violation of a federal statute must establish that the statute at issue created "rights, privileges, or immunities" within the meaning of § 1983 and that Congress did not foreclose private enforcement of that statute under § 1983 in the enactment itself, for instance by providing " 'an exclusive remedy for violations of its terms.' " *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (quoting *Maine v. Thiboutot,* 448 U.S. at 22 n. 11, 100 S.Ct. at 2514 n. 11 (Powell, J., dissenting)); *see also Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981) (hereinafter *Sea Clammers* ). Thus, the court must preliminarily determine whether Congress intended to foreclose private enforcement of 15 U.S.C. § 1673 through the remedial provision of 42 U.S.C. § 1983.

▬ Section 303 of the Consumer Credit Protection Act, 15 U.S.C. § 1673 (1982), falls within Subchapter II of that Act. Under 15 U.S.C. § 1676 (1982), it is mandated that the Secretary of Labor, through the Labor Department's Wage and Hour Division, "shall enforce the provisions" of Subchapter II. In cases involving other sections of that subchapter, courts have concluded that "judicially implying a private remedy under Subchapter II would disrupt the administrative procedure set out by Congress for vindication of those federally created rights." *Smith v. Cotton Brothers Baking Co.,* 609 F.2d 738, 742 (5th Cir.), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980); *see also LeVick v. Skaggs Companies, Inc.,* 701 F.2d 777 (9th Cir.1983); *Snapp v. United States Postal Service,* 664 F.2d 1329, 1331 n. 7 (5th Cir. 1982); *McCabe v. City of Eureka,* 664 F.2d 680 (8th Cir.1981); *contra: Ellis v. Glover & Gardner Construction Co.,* 562 F.Supp. 1054 (M.D.Tenn.1983). This court reached a similar conclusion recently in dismissing a claim predicated on § 1673. *Martin v. Supreme Court,* 644 F.Supp. 1537, 1543 (N.D.N.Y.1986). The above-cited cases ad-

---

**6.** Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982).

dress whether the provisions of Subchapter II themselves impliedly create a private cause of action, not whether there was evidence of *express* congressional authorization of private suits under § 1983. *See Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2625 (recognizing distinction between implied cause of action under substantive statute and express authorization to redress violation of statute under § 1983). Nevertheless, these cases are instructive in this discussion of the legislative history of the CCPA and congressional intentions in enacting Subchapter II. Cf. *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 98 (2d Cir.), *cert denied*, ── U.S. ──, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986) (evidence of congressional intention not to create implied private right of action under certain provisions of Federal Aviation Act, 49 U.S.C. §§ 1305(a), 1349(a) (1982), also supports district court's dismissal of § 1983 claim).

Subchapter II of the CCPA was enacted in response to concerns raised by the potential for predatory extensions of credit, the disruptions in employment relations caused by unrestricted wage garnishments, and out of a desire to diminish disparities in the application of the bankruptcy laws from state to state caused by differences in the laws governing income executions in the various states. 15 U.S.C. § 1671; *see Long Island Trust Co. v. United States Postal Service*, 647 F.2d 336, 339 (2d Cir.1981); *Smith*, 609 F.2d at 742 (citing H.R.Rep. No. 1040, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 1962). The legislative history of the CCPA, though revealing no express congressional intention to preclude a private cause of action predicated upon any provision of Subchapter II of the Act, does indicate that there was "an implicit legislative manifestation to deny a private remedy." *Smith*, 609 F.2d at 742. The other five subchapters of the CCPA expressly provide private remedies for specific violations of the Act, *see* 15 U.S.C. §§ 1640, 1667d, 1681n–1681p, 1691e, 1692k, 1693m (1982), while express authorization of a private cause of action for a violation of Subchapter II is conspicuously absent. Further, Subchapter I of

the CCPA was enacted on the same date and as part of the same law as Subchapter II. *See* Consumer Credit Protection Act, Pub.L. No. 90–321, 82 Stat. 146 (1968). As the court noted in *McCabe*, "[t]he absence of any reference to a private right of action in Subchapter II when viewed in light of Congress' detailed provision of such a right under Part B of Subchapter I (15 U.S.C. § 1640) is ... an implicit manifestation of an intent to deny such a remedy." 664 F.2d at 682. This conclusion is buttressed by the unequivocal language of § 1676 ("the Secretary of Labor ... *shall* enforce the provisions of [Subchapter II]" (emphasis added) and the Report of the House Committee on Banking and Currency ("[e]nforcement of [Subchapter II] is vested in the Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor"). *See* H.R.Rep. No. 1040, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 1962, 1978.

The available evidence suggests that by entrusting the enforcement of the provisions of Subchapter II to the Secretary of Labor, Congress intended to foreclose private enforcement of 15 U.S.C. § 1673 through a civil suit instituted under 42 U.S.C. § 1983. Therefore, that part of plaintiffs' complaint seeking redress for violations of § 1673 under § 1983 is dismissed.

### III. PLAINTIFFS' § 1983 CLAIMS PREDICATED UPON AN ALLEGED DENIAL OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT

Plaintiffs argue that this statutory framework regulating wage garnishment in New York fails to satisfy the minimum requirements of due process in two respects. First, under New York law an income execution may be served upon a judgment debtor without providing him notice of the protections afforded by the CCPA. Nothing in New York's garnishment procedures provides notice to the judgment debtor or the debtor's employer of the existence of the exemption provided

by 15 U.S.C. § 1673, nor is the judgment debtor or his employer instructed as to how to compute the wages exempt from garnishment under either 15 U.S.C. § 1671 *et seq.* or CPLR § 5231(b). Second, New York's procedures fail to provide notice to an unrepresented judgment debtor that he can challenge an income execution that violates the terms of federal or state law through either CPLR § 5231(g) or CPLR § 5240 by initiating a proceeding in the court in which his creditor obtained the judgment against him. To properly assess these plaintiffs' due process claims, the court must first examine in greater detail the statutory framework guiding the issuance of income executions in New York.

An income execution is one of a number of post-judgment mechanisms governed by Article 52 of the CPLR that enable a judgment creditor to take measures to collect a judgment obtained against a judgment debtor. An income execution operates on any money received "from any person," whether in the form of wages, compensation for personal services, or income from a trust. N.Y.C.P.L.R. § 5231(b). Under New York law, if a judgment debtor receives more than $85 a week in income, up to ten percent of his wages or other income can be garnished.

The income execution is ordinarily drafted by an attorney representing the judgment creditor, though it may be issued by the court clerk. The attorney need not obtain a court order before issuing the income execution. The CPLR requires that the execution contain certain specified information, including the court in which judgment was entered, the date of its entry, the names of the judgment debtors and creditors, and the amount of the judgment and the balance thereof that remains unsatisfied. N.Y.C.P.L.R. § 5230(a). In addition, § 5231(a) of the CPLR requires that an income execution contain the name and address of the person from whom the debtor is receiving money (ordinarily the judgment debtor's employer), the amount paid over to the judgment debtor by that person and the frequency of those payments, and the amount to be withheld from those payments by virtue of the garnishment. N.Y.

C.P.L.R. § 5231(a). There is no requirement that the income execution give notice to either the judgment debtor or his employer of the exemptions provided by the Consumer Credit Protection Act.

The income execution is delivered directly to the sheriff or other court enforcement officer of the county in which the judgment debtor resides or, if the judgment debtor is a non-resident, to the enforcement officer of the county in which the judgment debtor is employed. N.Y.C.P.L.R. § 5231(b). The record indicates that these enforcement officers often do not hold public office but instead are private contractors authorized to serve income executions for a commission. *See* Doc. 37. The sheriff or other enforcement officer must serve a copy of the execution upon the judgment debtor within twenty days of receiving the execution. N.Y.C.P.L.R. § 5231(c). The income execution must contain a notice advising the judgment debtor of his obligation to start deducting the installments specified by the execution from his wages and paying them over to the sheriff, and must inform the judgment debtor that if he fails to do so the execution will be served upon his employer. N.Y.C.P.L.R. § 5231(a). If the judgment debtor fails to pay over installments pursuant to the terms of the income execution within twenty days of service (or if the sheriff is unable to effect service on the judgment debtor in the manner prescribed by CPLR § 5231(c)), the sheriff is then empowered to serve the execution upon the judgment debtor's employer. N.Y.C.P.L.R. § 5231(d). An employer served with an income execution must withhold from the judgment debtor's paycheck each payday the installments specified, which under CPLR § 5231(b) can constitute as much as ten percent of the judgment debtor's wages, and turn the withheld amount over to the sheriff. N.Y. C.P.L.R. § 5231(e). If the employer fails to do so, he himself may become liable for accrued installments. *Id.* The sheriff is to tally the monies collected pursuant to the income execution and periodically pay over to the judgment creditor the amount received. N.Y.C.P.L.R. § 5231(i). Either the

judgment creditor or the judgment debtor can move the court in which judgment was entered for an order modifying an income execution. N.Y.C.P.L.R. §§ 5231(g), 5240.

Before reaching the merits of plaintiffs' constitutional challenge to this procedural scheme, the court must address whether the relief sought by plaintiffs—primarily declaratory and injunctive relief—can be obtained through a § 1983 action against any or all of the named defendants.

### A. *The Relief Sought Against Defendants Vitanza and Hillis*

■ The Honorable Matthew Vitanza and the Honorable John T. Hillis, Judges of the City Court in Binghamton, are named as defendants in their official capacity and as representatives of a proposed defendant class consisting of "all judges and justices of the various courts of New York's Unified Court System who have jurisdiction to enter money judgments and to enforce such judgments by means of an income execution against the wages or earnings of the judgment debtor" (the "judge class"). Complaint ¶ 14. Plaintiffs seek injunctive relief under § 1983 prohibiting the judge class from "making, issuing, accepting for enforcement, or enforcing any income execution" which does not instruct the judgment debtor and his employer on how to compute the wages exempted from garnishment by both federal and state law and does not contain notice to unrepresented judgment debtors of the procedures provided by §§ 5231(g) and 5240 of the CPLR through which an execution on exempt wages can be challenged.[7] Complaint, Prayer for Relief ¶ 3(a).

An examination of the procedures set out in the CPLR governing wage garnishments reveals that the due process violations alleged by plaintiffs occur before any judge or justice in the New York court system is required to intervene. Plaintiffs claim that notice of the rights of judgment debtors under federal law should be included in the

income execution itself; however, as detailed above, income executions are as a rule issued by attorneys and served by sheriffs or other enforcement officers. Plaintiffs note that a judicial officer has the discretion to modify or deny the use of an income execution on his own motion under CPLR § 5240, and thus potentially could become involved in the garnishment process even before an income execution is served upon a judgment debtor. If the court were to grant the relief plaintiffs request as against the proposed judge class, however, it would in essence require state judges to review all income executions issued in New York *prior* to their service to determine whether they meet the requisites of due process. This duty is nowhere imposed on the state courts by state law, and this court is unwilling to subject state judges to such a burden by judicial fiat. The underlying purpose of this lawsuit is to insure that judgment debtors are notified of the protections provided by the CCPA and CPLR. This purpose would best be served by requiring that a notice accompany the service of an execution, or better yet be contained within the income execution itself. Because state judges are not obligated by state law to become involved with the ministerial acts of issuance or service of income executions until an interested party brings some objection to the execution to their attention, the relief sought against them in this action is inappropriate.

There is no evidence that either Judge Vitanza or Judge Hillis ever issued an order upholding or enforcing an income execution in violation of 15 U.S.C. § 1673. Further, it appears to the court that no members of the proposed judge class are responsible for any violation of the constitutionally protected due process rights of plaintiffs or other judgment debtors as a result of New York's wage garnishment scheme. Therefore, all of plaintiffs' claims

---

7. Plaintiffs also seek an injunction prohibiting the "judge class" from making, issuing, or enforcing any income execution until "a simplified procedure has been established" through which judgment debtors can "request the [judge class]

to perform [its] duty to enforce 15 U.S.C. § 1671 *et seq.*," as well as declaratory relief. For the reasons discussed in the text, *infra,* these claims are dismissed.

against defendants Vitanza and Hillis are dismissed. Consequently, plaintiff's motion to certify a defendant class of judges is moot.

### B. *State Action*

Of the remaining defendants, four are private parties: Hull and Kamen, the two attorneys who issued the income executions, and Gamble and Susquehanna, plaintiffs' judgment creditors. Further, plaintiffs request the certification of a class of civil enforcement officers empowered to enforce income executions under New York law, many of whom apparently are independent contractors not employed by the State of New York. *See* Doc. 37. Section 1983 was enacted in order to provide a remedy for the deprivation of protected interests by the State. Plaintiffs clearly have a protectable property interest in their wages and other income. *See, e.g., Brown v. Liberty Loan Corp.,* 539 F.2d 1355, 1365 (5th Cir.1976), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977). A more difficult question is whether this property interest is being threatened by conduct which can be ascribed to the State.

When § 1983 is invoked to remedy an alleged deprivation of a protected property interest without due process of law and the actions of private individuals was the direct cause of the deprivation alleged, the onus is on plaintiffs to establish that the conduct of the private parties was "fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Dahlberg v. Becker,* 748 F.2d 85, 89 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). To "fairly attribute" conduct to the State, plaintiffs must show that there was both "state action" and a "state actor" who was responsible for the challenged conduct. *Dahlberg,* 748 F.2d at 89. As the Supreme Court more fully explained in *Lugar,*

[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

457 U.S. at 937, 102 S.Ct. at 2753. Determining whether these two conditions co-exist necessarily involves a "fact-intensive ... inquiry." *International Society for Krishna Consciousness, Inc. v. Air Canada,* 727 F.2d 253, 255 (2d Cir.1984).

In the present case, the first requirement is clearly met. Plaintiffs do not allege private misuse of an otherwise constitutional state statute, conduct which cannot be attributed to the State, *see Wright v. National Bank of Stamford,* 600 F.Supp. 1289, 1298 (N.D.N.Y.), *aff'd,* 767 F.2d 909 (2d Cir.1985), but instead challenge a "procedural scheme created by ... statute" which "obviously is the product of state action." *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2756. The mere existence of a statute which permits conduct, however, does not necessarily mean that that conduct can be imputed to the State. *See Flagg Bros.,* 436 U.S. 149, 98 S.Ct. 1729. Plaintiffs must also establish that the parties responsible for the actions which resulted in the allegedly unconstitutional deprivation were "state actors."

The courts have recognized four limited circumstances under which a private party should be deemed a "state actor" whose conduct is attributable to the State, thus providing the basis for a § 1983 suit. *See Dahlberg,* 748 F.2d at 92–93. When a party's conduct is the direct result of a state agent's encouragement or command, the private party will be viewed as a state actor. *Id.* at 92. When the private actor has been granted benefits by the State of such a nature that the individual and the State are inseparably linked togeth-

er, the conduct of the private individual may be attributed to the State. *See, e.g., Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). When a private party undertakes to perform activities ordinarily within the exclusive purview of a governmental entity, the public function doctrine will cast the private party in the role of state actor. *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). Finally, when the State and the private party jointly act to deprive one of his rights, the "joint action test" will impute the actions of the private party to the State. *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755; *Flagg Bros.*, 436 U.S. 157, 98 S.Ct. at 1734; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *see also United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).

In the case at bar, the private defendants are state actors by virtue of the joint action test. As the Court explained in *Price,*

> [p]rivate persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for the purposes of [§ 1983]. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

383 U.S. at 794, 86 S.Ct. at 1157. The Supreme Court in a long line of cases has explicitly or impliedly held that the conduct of private parties undertaken pursuant to prejudgment attachment procedures can be ascribed to the State "whenever officers of the State act jointly with a creditor in securing the property in dispute." *See, e.g., Lugar*, 457 U.S. at 932–33, 102 S.Ct. at 2751 (prejudgment attachment of debtor's personal property); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (same); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (sequestration enforcing vendor's lien); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct.

1983, 32 L.Ed.2d 556 (1972) (replevin of chattels); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (prejudgment garnishment of wages). The Court in *Lugar* carefully limited its holding to the context of prejudgment attachments, specifically rejecting the notion that "'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of law.'" 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21 (quoting *Lugar*, 457 U.S. at 951, 102 S.Ct. at 2761 (Powell, J., dissenting)). Nonetheless, the rationale underlying the holdings in these cases involving prejudgment attachments applies with equal force to actions by private parties pursuant to a State's post-judgment garnishment statutes. Just as in the cases involving prejudgment garnishments, the private defendants in this case did not simply pursue collection of a debt by private means permissible under New York law but instead invoked the authority of a public official— the enforcement officer of a local court— and compelled a garnishee to withhold pay from a judgment debtor at the threat of incurring personal liability for monies not withheld. *See* N.Y.C.P.L.R. § 5231(e). This case is thus distinguishable from *Flagg Bros.*, where the Supreme Court held that conduct that is merely *consistent* with a body of law, whether statutory or decisional, does not without more amount to "state action" when "no state process or state officials were ever involved in enforcing that body of law." 436 U.S. at 160 n. 10, 98 S.Ct. at 1735 n. 10.

Having determined that the court has jurisdiction over all of the remaining defendants in a cause of action brought under § 1983 alleging a constitutional violation, the court now addresses the substantive merits of the relief sought.

## C. Class Certification

### 1. The Plaintiff Class

Plaintiffs move pursuant to Rule 23, Fed.R.Civ.P., for the certification of a plaintiff class consisting of all "per-

sons," as that term is used in § 1983, who are or may become judgment debtors in the State of New York and have had or may have their wages or other earnings garnished through an income execution issued and delivered pursuant to CPLR §§ 5230 and 5231, or through the myriad of lower court acts that adopt the garnishment procedures established in the CPLR. Though the party seeking to maintain a class action has the burden of establishing the propriety of the designation of a proposed class, *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir.1968), plaintiffs need not make an extensive evidentiary showing in support of their motion. Plaintiffs are required only to "set forth sufficient factual information to enable the [c]ourt reasonably to permit the action to continue as a class action under Rule 23," *Harrison v. Simon,* 91 F.R.D. 423, 429 (E.D.Pa.1981), and the court must take plaintiffs' allegations to be true and must refrain from examining the merits of the complaint itself in determining the appropriateness of a class designation. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).

■ To properly assess a motion for class certification, two threshhold inquiries must be made. First, the court must determine whether the proposed class and its members are "clearly defined and identified with particularity." *Hendrix v. Faulkner,* 525 F.Supp. 435, 442 (N.D.Ind. 1981), *vacated in part on other grounds,* 715 F.2d 269 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). Secondly, the named parties must be members of the class as it is defined at the time of certification. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). At first blush, the plaintiff class that has been proposed may seem overbroad since the main thrust of plaintiffs' complaint centers around the protections afforded low income debtors by federal law, while the proposed class is not limited to low income individuals. However, since an aspect of plaintiffs' due process claim is that no judgment debtors are provided notice of the provisions of the CPLR allowing the challenge in court of income executions issued in New York, the plaintiff class need not be so limited. However, the only individuals truly aggrieved by the alleged constitutional deficiencies of New York's garnishment provisions are actual or potential post-judgment wage garnishees. Therefore, the class should be redefined so as to include only those who have had a judgment for money damages taken against them. With this one modification the class as proposed seems otherwise appropriate. As to the second requirement, it is undisputed in the record that the named plaintiffs are judgment debtors.

■ Plaintiffs must also establish that the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) have been met. There is evidence to support the conclusion that the proposed class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Defendants admit that there are at least 2,327 judges in the Unified Court System of the State of New York, most of whom are empowered to render money judgments of varying amounts. *See* N.Y. Const. art. 6, § 7 (jurisdiction of supreme courts); N.Y. Const. art. 6, § 9 and N.Y.Ct.Cl.Act § 9 (jurisdiction of court of claims); N.Y. Const. art. 6, § 11 and N.Y.Jud.Law § 190 (jurisdiction of county courts); N.Y. Const. art. 6, § 16(d) and N.Y.Uniform Dist.Ct.Act § 202 (jurisdiction of district courts); N.Y. Const. art. 6, § 15(b) and N.Y.City Civ.Ct.Act § 202 (jurisdiction of New York City civil courts); N.Y. Const. art. 6, § 17(a) and N.Y.Uniform City Ct.Act § 202 (jurisdiction of city courts outside of New York City); N.Y. Const. art. 6, § 17(a) and N.Y.Uniform Justice Court Act § 202 (jurisdiction of town and village courts). It is reasonable to infer that a significant number of persons are rendered judgment debtors in their courtrooms, and that these judgment debtors "are likely to be widely dispersed throughout the state, and that it would be difficult to identify such persons and ascertain their addresses." *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1190

(S.D.N.Y.), *modified,* 550 F.Supp. 642 (S.D.N.Y.1982). Under these circumstances, "plaintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates." *Id.*

 It also appears that plaintiffs present questions of law and fact common to the proposed class. Rule 23 does not require complete identity of legal claims among the class members so long as at least one common question can be identified. *McCoy v. Ithaca Housing Authority,* 559 F.Supp. 1351, 1355 (N.D.N.Y.1983). In the present case, the common question of law at issue is whether New York's post-judgment garnishment procedures violate due process by failing to insure that judgment debtors are notified of the limitations placed on income executions by federal and state law and more generally of their right to challenge such executions through the means provided in the CPLR. Similarly, the claims of the named plaintiffs seem typical of the claims of the proposed class. This appears to be a case where the typicality and commonality elements of Rule 23(a) merge, *see Avagliano v. Sumitomo Shoji America, Inc.,* 103 F.R.D. 562, 580 (S.D.N.Y.1984), and the due process deprivations allegedly suffered by the named plaintiffs in this case seem typical of the class as a whole.

 Finally, the adequacy of representation requirement has been satisfied. There are two elements of this requirement: the named plaintiffs must appear ready to prosecute the interests of the class vigorously so that the rights of absent class members are protected, and the counsel representing the named plaintiffs must be sufficiently qualified to conduct the proposed litigation. *Hendrix,* 525 F.Supp. at 444. In the instant case, the named plaintiffs allege direct harm as a result of the conduct of defendants and are thus familiar with the implications of the legal issues raised by this lawsuit; there is no apparent conflict of interest between them and unnamed class members; and the named plaintiffs' interest in securing the protection of constitutional rights appears co-extensive with the interests of the unnamed class members. *See Ross v. A.H. Robins Co., Inc.,* 100 F.R.D. 5, 7 (S.D.N.Y. 1982); *Calkins v. Blum,* 511 F.Supp. 1073, 1088 (N.D.N.Y.1981), *aff'd,* 675 F.2d 44 (2d Cir.1982); *Hendrix,* 525 F.Supp. at 444. Further, there is no evidence that plaintiffs' counsel, the Broome Legal Assistance Corporation, is unqualified to conduct this litigation through any subsequent proceedings that may be required. Thus, all of the prerequisites to a class action listed in Rule 23(a) have been met.

In order to maintain a class action under Rule 23, the party seeking class designation must demonstrate, in addition to the preliminary requisites of subdivision (a), that one of the conditions listed in subdivision (b) is applicable. Plaintiffs seek class certification under subdivision (b)(2), a provision applicable in cases, such as this one, where only declaratory or injunctive relief is sought through the class designation. Rule 23(b)(2) requires a showing that the parties opposing certification have "acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). That condition is met here, where the conduct at the heart of this lawsuit—the issuance and delivery of income executions pursuant to the provisions of the CPLR—could potentially affect all of the members of the plaintiff class.

To obtain certification under subdivision (b)(2), the Second Circuit requires that "additional reasons for obtaining certification" be established. *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978), *vacated on other grounds,* 607 F.2d 535 (2d Cir.1979). This consideration is particularly relevant when declaratory or injunctive relief is sought against public officials. As Judge Friendly noted in *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974),

insofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the

archetype of one where class action designation is largely a formality, at least for the plaintiffs.... [W]hat is important ... is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated.

*Id.* (citations omitted) (emphasis in original); *see also Davis,* 607 F.2d at 540. In this case, however, class certification is not merely a "formality." The danger that the individual claims of the named plaintiffs might be mooted during the pendency of any appeal or other subsequent proceeding that might be contemplated by the parties is great. *See Greklek v. Toia,* 565 F.2d 1259, 1261 (2d Cir.1977), *cert. denied,* 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978); *see also Hoehle v. Likins,* 538 F.2d 229, 231 (8th Cir.1976); *Calkins v. Blum,* 511 F.Supp. at 1089. In addition, defendants have not given assurances on the record indicating that they stand ready to apply any court-ordered changes in the procedures employed in serving income executions. See *Galvan,* 490 F.2d at 1261. Therefore, the principles enunciated in *Davis* and *Galvan* do not preclude the designation of a plaintiff class in the case at bar, and the court finds certification of the proposed class as modified above appropriate.

### 2. *The Defendant Class*

Plaintiffs also move for the certification of a defendant class, referred to as an "enforcement officer class," consisting of all sheriffs, marshals, constables, or other civil enforcement officers empowered to enforce income executions upon the wages or other earnings of judgment debtors in the various courts of New York's Unified Court System. Although expressly permitted by Rule 23, certification of a defendant class is comparatively rare, though certainly not unknown. *DeAllaume v. Perales,* 110 F.R.D. 299, 303 (S.D.N.Y.1986); *Marchwinski v. Oliver Tyrone Corp.,* 81 F.R.D. 487, 489 (W.D.Pa.1979). The reluctance of many courts to certify defendant classes is rooted in the fact that the creation of defendant classes raises due process concerns not encountered when the designation of a plaintiff class is sought.

*Akerman v. Oryx Communication, Inc.,* 609 F.Supp. 363, 374 (S.D.N.Y.1984); *Marchwinski,* 81 F.R.D. at 489. An unnamed member of a plaintiff class generally stands to gain from the litigation in which a plaintiff class is certified; all that is risked is the right to later bring a cause of action in his own name. An unnamed member of a defendant class, however, "stands to lose" without having had the opportunity to personally defend against the lawsuit. *Thillens, Inc. v. Community Currency Exchange Assn.,* 97 F.R.D. 668, 674 (N.D.Ill.1983); *Marchwinski,* 81 F.R.D. at 489. In light of this, a court must "carefully examine the impact of [class] certification on the rights of unnamed class members" before designating a defendant class. *Akerman,* 609 F.Supp. at 375.

Some of the due process problems raised when the certification of a defendant class is sought are addressed by Rule 23 itself. The rule requires the court to insure that a class will be adequately represented in the pending litigation, Fed.R.Civ.P. 23(a)(4), and, when it is possible that money damages may be incurred, that sufficient notice be provided to unnamed class members. Fed.R.Civ.P. 23(c)(2). In addition to these safeguards, most courts also require a showing that *each* member of the designated plaintiff class has a colorable claim against *each* member of the defendant class. *See, e.g., Akerman,* 609 F.Supp. at 375; *Vulcan Society v. Fire Department,* 82 F.R.D. 379, 398–99 (S.D.N.Y.1979). This judicially-imposed condition to the maintenance of a lawsuit against a defendant class need not be satisfied, however, when the members of the proposed defendant class "are related by a conspiracy or 'juridical link.'" *Thillens,* 97 F.R.D. at 676; *see also DeAllaume,* 110 F.R.D. at 303.

A "juridical link" has been defined as "some [independent] legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions." *Thillens,* 97 F.R.D. at 676. Examples of such links include partnerships or joint enterprises, conspiracy, and aiding and abetting, since these terms denote some form

of relationship or activity on the part of the members of the proposed defendant class "that warrants imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman*, 609 F.Supp. at 375 (citing Note, *The Juridical Links Exception to the Typicality Requirement in Multiple Defendant Class Actions: The Relationship Between Standing and Typicality*, 58 B.U.L.Rev. 492, 495 (1978)). Most often, "juridical links" are found in cases where all members of the proposed class "are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." *Mudd v. Busse*, 68 F.R.D. 522, 528 (N.D.Ill.1975); *see also Marcera v. Chinlund*, 595 F.2d 1231, 1238–39 (2d Cir.), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *DeAllaume*, 110 F.R.D. at 303–304. This last example is closely analogous to the circumstances surrounding the present lawsuit. Defendants contend in their papers that only the thirteen marshals of the various city courts in New York are employees of the State of New York and that all other civil court enforcement officers who have the power and the duty to serve and collect upon income executions are "independent contractors." *See* Doc. 35. If this representation is true, then most of the members of the proposed "enforcement officer" class may not be "public officials," strictly speaking. Without addressing whether the method by which civil court enforcement officers are compensated affects whether they are "public officials" within the meaning of *Mudd v. Busse* and its progeny (though the discussion above concerning the attribution of the acts of ostensibly private parties to the State may be instructive by analogy), the court finds that all members of the proposed defendant class are related in such a way that a single resolution of plaintiffs' due process claims is preferrable to a countless number of similar actions. New York law vests all members of this class with common powers and duties with respect to the service of

and collection upon income executions. Therefore, the members of the proposed class are related by a recognizable "juridical link," and thus the fact that each member of the plaintiff class cannot maintain an action against each member of the proposed defendant class does not preclude certification of the defendant class.

Plaintiffs seek certification of the proposed class under subdivisions (b)(1)(B) or (b)(2) or Rule 23. For the reasons stated in the discussion concerning the designation of the plaintiff class, *supra*, the court finds that the proposed defendant class satisfies the requirements of subdivision (b)(2). Further, the court finds that the prerequisites of subdivision (a) have also been satisfied.

Defendants do not contend that the commonality or typicality requirements have not been met. Defendants instead argue that the named class representative is not a member of the proposed class, and further contend that the numerosity and adequacy of representation requirements of subdivision (a) have not been satisfied. When this suit was initiated, plaintiffs named as one of the defendants John Bachochin, Jr., who was sued in his official capacity as the Marshal of the City Court of Binghamton and as a representative of "all others similarly situated." Defendants note that Bachochin is no longer a Marshal of the Binghamton City Court and thus not a member of the proposed class. However, Bachochin was sued in his official capacity as court marshal, and Rule 25, Fed.R. Civ.P., provides for the automatic substitution of the successor to a public officer sued in his official capacity. The record indicates that Frank Cooper, the current Marshal for the Binghamton City Court, is empowered to serve and collect upon income executions issued in the State and thus is a member of the proposed class. Therefore, the failure of plaintiff to make a motion for the substitution of a party does not defeat maintenance of a class action.

Defendants also maintain that only thirteen marshals are employed by the State of New York, and that the other civil enforcement officers operating in the State are

independent contractors. From this they conclude that the proposed class is not "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). This argument is untenable because the class proposed by plaintiffs is not limited to marshals of the various city courts located in the State. Since the courts in New York empowered to render money judgments number in the hundreds, common sense compels the conclusion that a class consisting of the enforcement officers for these courts satisfies the numerosity requirement.

■ Defendants also argue that these "independent contractors" are not directly represented by the New York Attorney General and that their interests are not adequately represented by the named class representative. However, it cannot be disputed that the Attorney General's office is sufficiently qualified to conduct this action and, particularly in light of the fact that plaintiffs challenge the constitutionality of procedures established by State law, there is no danger that the Attorney General will not prosecute the interests of the proposed defendant class vigorously. *See Hendrix,* 525 F.Supp. at 444. The Attorney General's office is familiar with the legal issues raised in this lawsuit, and no apparent conflict of interest between the civil enforcement officers who are paid directly by the State and those who work on commission exists under the facts of this case. Rule 23 "does not require a willing representative but merely an adequate one." *Marcera,* 595 F.2d at 1239. The court concludes that plaintiffs have satisfied the Rule 23 requirements for establishing the defendant class.[8]

**D.** *The Merits of the Due Process Claims*

■ Having disposed of the preliminary issues presented by this case, the court turns to the substantive merits of the due process claims that have been raised. Plaintiffs argue that because New York's post-judgment income execution procedures fail to notify the judgment debtor or his employer of the exemptions from garnishment provided by federal and state law, of the manner in which the amounts exempted from garnishment are to be calculated, and of the existence of the mechanisms provided by CPLR § 5231(g) and CPLR § 5240 through which income executions can be challenged, this statutory scheme falls short of the minimum requirements of constitutional due process. Judgment debtors have a property interest in wages and other income subject to an income execution pursuant to CPLR § 5231 that implicates due process considerations. *See Brown v. Liberty Loan Corp.,* 539 F.2d at 1365. In resolving whether the procedures governing collection of a judgment through an income execution adequately protect judgment debtors from an erroneous deprivation of this property interest, the court is guided by a number of recent cases assessing the constraints placed on various post-judgment collection procedures available to judgment creditors by the mandates of the fourteenth amendment. *See McCahey v. L.P. Investors,* 774 F.2d 543 (2d Cir.1985); *Dionne v. Bouley,* 757 F.2d 1344 (1st Cir. 1985); *Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (en banc); *Diotte v. Blum,* 585 F.Supp. 887 (N.D.N.Y.1984) (Miner, J.); *Deary v. Guardian Loan Co.,* 534 F.Supp. 1178 (S.D.N.Y.), *modified,* 550 F.Supp. 642 (S.D.N.Y.1982).

An analysis of the requirements of due process with respect to post-judgment en-

---

**8.** The court also believes that because of the danger of mootness in the event of subsequent proceedings in this case, the principles of *Galvan v. Levine* and its progeny do not render certification of the proposed class inappropriate. In any event, the court does not believe that *Galvan* is applicable when the certification of a defendant class is sought. As discussed in the text, *supra,* that case held that the certification of a plaintiff class in a case seeking prohibitory relief was unnecessary when the judgment obtained by an individual plaintiff would "benefit not only ... the named plaintiffs but ... all others similarly situated...." 490 F.2d at 1261. The same reasoning does not seem to apply when certification of a defendant class is sought, however, since the purpose of establishing such a class when declaratory or injunctive relief is sought would be defeated if only a few individuals would be bound by any adverse determination on the merits of the claims of the plaintiffs.

forcement devices necessarily must start with *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), in which the Supreme Court concluded that the Constitution did not mandate notice and an opportunity to be heard before a judgment creditor could obtain a writ to garnish a judgment debtor's wages. The Court reasoned that

the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

*Id.* at 288, 45 S.Ct. at 62 (citations omitted). As judicial understanding of the shadowy contours of "due process" has evolved in the years following the Court's pronouncement in *Endicott-Johnson,* however, the continued vitality of the "formalistic" holding of that case has been questioned. *See, e.g., McCahey,* 774 F.2d at 547–48; *Dione,* 757 F.2d at 1351; *Finberg,* 634 F.2d at 56–58; *Brown v. Liberty Loan Corp.,* 539 F.2d at 1363–65; *Diotte,* 585 F.Supp. at 901–02; *Deary,* 534 F.Supp. at 1183–86.

First, in a number of recent decisions involving pre-judgment sequestrations and attachments the Supreme Court has adopted a more flexible approach to the question of what process is due when creditors attach the property of debtors through mechanisms established by state law than was evident in *Endicott-Johnson. See, e.g., North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (notice and opportunity to be heard required prior to pre-judgment garnishment of bank account); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (prior notice

and hearing not required before pre-judgment sequestration of goods if procedure provided accomodates "conflicting interests of the parties"); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (notice and hearing required before replevin of goods); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (notice and hearing required before pre-judgment garnishment of wages). While recognizing that the "process due" *after* a judgment has been rendered against a debtor is less than what is appropriate when the pre-judgment attachment of a debtor's assets is involved, *see Dionne,* 757 F.2d at 1351, recent decisions addressing the due process considerations raised when post-judgment garnishment procedures are utilized by judgment creditors have adopted an approach "which balances competing interests to determine the appropriate level of procedural protections before one may be deprived of the use of property" in a manner analytically consistent with these recent Supreme Court cases. *Deary,* 534 F.Supp. 1185–86.

The theoretical foundation of *Endicott-Johnson* has been further eroded by the Supreme Court's holding in *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). In *Griffin,* the Court concluded that an *ex parte* order directing issuance of an execution for the collection of unpaid alimony and cutting off defenses that might have been available to the husband violated due process. The *ex parte* judgment was based upon a prior alimony decree that arose out of a proceeding to which the husband had been a party. The Supreme Court recognized that the alimony decree gave the husband notice that subsequent proceedings might be initiated to collect upon his obligations under the decree, but nonetheless concluded that there was "no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the [alimony] decree did not." *Id.* at 229, 66 S.Ct. at 561 (footnote omitted). Some courts have concluded that *Griffin* effectively un-

dermined the rationale of *Endicott-John-son*. *See Reigh v. Schleigh*, 595 F.Supp. 1535, 1549–52 (D.Md.1984), *vacated on other grounds*, 784 F.2d 1191 (4th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 167, 93 L.Ed.2d 105 (1986); *Neeley v. Century Finance Co.*, 606 F.Supp. 1453, 1461–62 (D.Ariz.1985); *see also Hanner v. DeMarcus*, 390 U.S. 736, 742, 88 S.Ct. 1437, 1441, 20 L.Ed.2d 270 (1967), *cert. dismissed as improvidently granted* (Douglas, J., dissenting) ("Is there any more reason to accept in this case the *Endicott* fiction of constructive notice because of knowledge of the underlying judgment than there was in *Griffin?*"). In any event, it seems clear that *Endicott-Johnson* does not govern cases where specific exemptions from post-judgment garnishment are provided by federal and state law. As Judge Lasker observed in *Deary*, a judgment on a debt does not necessarily establish the propriety of the means used to satisfy the judgment when limitations are placed on a creditor's collection of a judgment.

> While notice of and an opportunity to be heard on the merits is directed to the question whether the debt is actually owed, the attempt to enforce the judgment raises the distinct issue whether particular property of the judgment debtor is available to satisfy the judgment. Thus, regardless of whether the debtor wishes to be heard on the merits or not, he or she has a distinct interest in being informed of and having an opportunity to challenge specific attempts to satisfy the judgment.

534 F.Supp. at 1185.

Modern due process jurisprudence attempts to balance competing individual and governmental concerns. The parameters of this balancing approach, of course, were established in an oft-quoted passage from *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. Applying the *Mathews* factors to the present case, the court must conclude that New York's post-judgment garnishment scheme offends the fourteenth amendment.

The private interest of the judgment debtor affected by the challenged procedures—his property interest in the wages he earns—is fundamentally important. Most individuals rely on such earnings to meet the basic necessities of life, and many have no other available source of capital. *See Finberg*, 634 F.2d at 58; *Deary*, 534 F.Supp. at 1187. For low income individuals, moreover, a creditor's utilization of garnishment procedures "may as a practical matter drive a wage-earning family to the wall." *Sniadach*, 395 U.S. at 341–42, 89 S.Ct. at 1823 (footnote omitted). Any execution on the wages of poor persons may potentially impede their ability to provide for themselves or their families, causing severe economic hardships which may entail serious attendant social and psychological consequences affecting both the individual whose wages are garnished and society as a whole.

Addressing the second *Mathews* factor, the court finds that the statutory framework governing income executions in New York inadequately guards against the erroneous deprivation of this fundamental property interest. These garnishment statutes, substantially unchanged since 1970 despite the significant impact of inflationary forces on the economic condition of low income wage-earners over the past seventeen years, essentially "abdicate effective state control over state power." *Fuentes v. Shevin*, 407 U.S. at 93, 92 S.Ct. at 2001. Private parties are allowed to invoke unilaterally the power of the State to garnish a judgment debtor's wages in furtherance of their own personal interest, and yet are not required to provide the judgment debtor or

his employer notice of the limitations placed on such executions by federal and state law or of their right to challenge the execution before an impartial tribunal. Since most low income wage-earners tend to be unfamiliar with the technicalities of the law, the failure to inform them of the protections of federal and state law very likely could result in the erroneous garnishment of what may be their only source of subsistence.

■■■ Fundamentally, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Though CPLR § 5231(g) and CPLR § 5240 provide a means through which judgment debtors can challenge an income execution, their availability alone does not satisfy the minimal requisites of the fourteenth amendment. These provisions may provide the opportunity to be heard that is required by the due process clause, but they do not satisfy the Constitution's notice requirements. When addressing the constitutionality of New York's property execution statutes, Judge Lasker concluded that without notice of the existence of the procedures designed to provide judicial oversight of property attachments, judgment debtors "are likely not to know that any relief may be available. Meanwhile they may be deprived of the use of the property despite the theoretical availability of relief. Thus, at least without appropriate notice, the provision of post-enforcement remedies cannot satisfy constitutional requirements." *Deary v. Guardian Loan,* 534 F.Supp. at 1188.

*Deary,* like other recent cases addressing the propriety of a state's post-judgment attachment procedures, drew guidance from the Supreme Court's holding in *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In *Memphis Light,* the Court held that a notice of termination of utility services that did not inform the customer of the availability of a procedure through which the termination could be contested fell short of the mandates of due process. Noting that those affected by the termination of such basic services would span "various levels of education, experience, and resources," the Court concluded that a notice that only informed the affected individual of the action taken but not of the procedures available for challenging the action was constitutionally inadequate. Validating such a notice would reflect a "restrictive view of the process due in the context of this case [and] would erect an artificial barrier between the notice and hearing components of the constitutional guarantee of due process." *Id.* at 14 n. 15, 98 S.Ct. at 1563 n. 15. Analogizing to the holding in *Memphis Light,* Judge Lasker concluded that "judgment debtors in the context of this case are entitled to notice of both the exemptions to which they may be entitled and the procedures for asserting those exemptions." *Deary,* 534 F.Supp. at 1187.

The court also concludes that the shortcomings of New York's current wage garnishment scheme can be largely overcome by adopting some of the additional procedural safeguards suggested by the plaintiffs. Specifically, if judgment debtors were notified of the specific exemptions to garnishment provided by 15 U.S.C. § 1673 and of the availability of the means provided by CPLR § 5231(g) and CPLR § 5240 through which a judgment debtor can assert those exemptions or otherwise oppose a particular execution either in the income execution itself or in a separate notice served on the judgment debtor simultaneously with the income execution, the danger of an unlawful garnishment would in all probability be reduced. As Judge Lasker noted in a very similar case, "[t]he salutary value of notice in this context is self-evident—it would enable the judgment debtor to assert his or her exemptions and thus prevent or correct an erroneous restraint or execution which would otherwise have the effect of depriving the debtor of property which may be necessary to meet the basic necessities of life." 534 F.Supp. at 1187; *see also Finberg,* 634 F.2d at 62

("Notice of these matters can prevent serious, undue hardship for the judgment debtor whose lack of information otherwise would cause delay or neglect in filing a claim of exemption.").

Against the considerations discussed above, the court must balance "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional ... procedural requirement would entail," *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903, and the private interest of the judgment creditor. As the Second Circuit noted in *McCahey*, a state's post-judgment remedial scheme is intended to serve its interest in assuring prompt and inexpensive collection on judgments rendered in its courts, which in turn furthers its more fundamental interest in securing compliance with its laws. The State also has an interest in fostering the efficient use of judicial resources. 774 F.2d at 549. In addition, there is a strong governmental interest in ensuring that the statutory exemptions from garnishment provided by both state and federal law are not circumvented. *Id.* Judgment creditors, of course, have an interest in having a judgment satisfied as quickly and inexpensively as possible. *Id.* The additional procedural safeguards suggested in this opinion do not subvert any of these interests, and they clearly "enhance the likelihood that the exemptions provided under state [and federal] law will be recognized." *Id.* The fiscal and administrative burdens imposed by requiring notification of the exemptions provided by 15 U.S.C. § 1673 and the availability of relief through motions to modify or invalidate executions pale in comparison to the judgment debtor's property interest in his wages and the danger under existing procedures of an erroneous deprivation of that property interest. Indeed, "conveyance of this information would not place a great [fiscal] burden on the state," *Finberg*, 634 F.2d at 62, since it could easily be included in the income execution itself.

In *Deary*, Judge Lasker concluded that post-judgment attachment procedures satisfy due process requirements if they provide the judgment debtor notice that his property has been seized, notice of exemptions to

which he might be entitled, and an opportunity to assert those exemptions or otherwise challenge the propriety of the attachment. 534 F.Supp. at 1187–88. This conclusion was later endorsed by the Second Circuit, which indicated that "judgment debtors are entitled at least to this much protection." *McCahey*, 774 F.2d at 549. As they stand now, New York's wage garnishment provisions provide notice to the judgment debtor that an execution has been made against his wages, *see* N.Y. C.P.L.R. § 5231(a), but do not require that the debtor be informed of the limitations placed on income executions by the CCPA or state law, nor do they inform the debtor of the availability of procedures through which an income execution can be challenged. Due process requires such notice. Therefore, the designated defendant class is enjoined from serving or collecting upon any income execution that does not contain notice, either within the execution itself or in a separate document served simultaneously with the execution, of the limitations placed upon garnishments by 15 U.S.C. § 1673 and of the procedures provided by CPLR § 5231(g) and CPLR § 5240 through which objections to executions can be heard.

■ The limited nature of the court's holding should be noted. The court by no means requires that all income executions issued in New York include a "laundry list" of all statutory limitations upon garnishments established by federal and state law. The due process clause does not "mandate judicial enactment of a kind of 'truth in lending' provision" to be included within all income executions served on judgment debtors or their employers in New York. *Dionne*, 757 F.2d at 1354; *see also Reigh v. Schleigh*, 784 F.2d 1191, 1194–99 (4th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 167, 93 L.Ed.2d 105 (1986). Further, the court does not attempt to prescribe in specific detail the language or form of the notice that should be provided judgment debtors. The court does not address whether, as plaintiffs maintain, due process requires that the notice provided must include a "computational formula" by which

the exemptions provided by § 1673 can be easily calculated by the judgment debtor. However, the wage exemptions provided by § 1673 do affect the interests of low income judgment debtors in such a fundamental manner that notice of that particular exemption in some form must be provided, as well as a more general notice that mechanisms to challenge the terms of income executions in general exist.

## IV. CONCLUSION

Plaintiffs' § 1983 claims predicated on the violation of 15 U.S.C. § 1673 and the New York Constitution are dismissed. All of plaintiffs' claims against the Honorable Matthew Vitanza and the Honorable John T. Hillis are dismissed and the Clerk is directed to enter judgment in favor of these two defendants. The court certifies a plaintiff class under Rule 23(b)(2) consisting of all persons who have had a judgment for money damages taken against them and have not satisfied that judgment, thereby making them subject to garnishment of their wages or other earnings through an income execution issued and delivered pursuant to CPLR §§ 5230 and 5231, or through provisions of the lower court acts that adopt the income execution procedures established in the CPLR. The court certifies a defendant class under Rule 23(b)(2) consisting of all sheriffs, marshals, constables, or other civil enforcement officers empowered to serve and enforce income executions in New York. The Clerk is directed to amend the caption of this action to substitute Frank Cooper for John Bachochin, Jr. as representative in his official capacity of this defendant class. Plaintiffs' motion for summary judgment on their claim for declaratory and injunctive relief against the defendant class is granted. The due process rights of the plaintiff class are violated when income executions are served upon judgment debtors without notice of the exemptions from garnishment supplied by 15 U.S.C. § 1673 or of the procedures for challenging income executions provided by CPLR § 5231(g) and CPLR § 5240. The members of the defendant class are enjoined from serving or collecting upon any income executions un-

less such notice is served upon the judgment debtor simultaneously with the income execution. The court does not pass upon plaintiffs' claim against defendants Hull, Kamen, Gamble and Susquehanna for wages withheld as a result of the service of the income executions upon their employers or their request for costs and attorney fees under 42 U.S.C. § 1988, since these issues have not been directly addressed in the papers before the court.

IT IS SO ORDERED.